IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CYNTHIA DILLON                     :

                                   :

      v.                           : Civil Action No. DKC 2004-0994

                                   :

THE MARYLAND-NATIONAL CAPITAL
PARK AND PLANNING COMMISSION :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, are the cross-motions for summary judgment by Plaintiff Cynthia Dillon (Paper 13) and Defendant Maryland-National Capital Park and Planning Commission ("MNCPPC") (Paper 16). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion for summary judgment will be denied, and Defendant's motion for summary judgment will be denied in part and granted in part.

## I.  Background

Unless otherwise noted, the following facts are uncontroverted. Plaintiff Cynthia Dillon was hired by Defendant MNCPPC in 1989 as an administrative aid. In 1995, she was transferred to the Payroll Section of Defendant's Finance

Department.   In August 2002, Plaintiff requested three weeks leave, to be taken from December 12, 2002 through January 2, 2003, in order to take a family vacation with her husband and children to Jamaica, where several of Plaintiff's relatives lived.  Plaintiff admits that she purchased the airline tickets before she submitted her request for leave, and, thus, before her request had been approved.  *See* Paper 13, Ex. 1 ("Plaintiff's Decl."), ¶ 7.  In response to Plaintiff's request, her second-level supervisor, Ms. Deloris Kirby, informed her that a leave of three weeks during that time of the year would not be possible.  *Id.*, ¶ 8; *see also* Paper 13, Ex. 2 (8/21/02 Kirby e-mail).

On November 6, 2002, Plaintiff submitted a second request for three weeks leave for the same time period.  In response to her second request, Plaintiff's third-level supervisor, Ms. Mary Williford, again informed Plaintiff that her leave request for three weeks in December/January could not be approved due to the nature of the Payroll Department's work program at that time of the year.  *See* Paper 13, Ex. 3 (11/7/02 Williford e-mail). However, Ms. Williford suggested that if Plaintiff desired, she could submit a leave request for December 12 through December 20, 2002, which Ms. Williford would recommend for approval.  In

an e-mail reply, Plaintiff provided why it was important to her
that her request be approved:

> Mary, unfortunately, I will incur a penalty
> if I change my ticket.  This vacation
> involve[s] my family.  In June of this year
> I was to go and didn't.  Unfortunately, my
> uncle who was very ill pass[ed] during that
> same timeframe [sic] and I did not get to
> go.
>
> Due to the fact that summer is a very
> difficult time to get three weeks off to
> spend time with my family, we thought
> December would be the very next best time.
> This time off does not just involve me, it
> involve[s] my family.

*See id.*  In addition to these reasons, Plaintiff wrote:

> My grandmother is not in the best of health
> and is asking for me.  I really don't want
> to go visit with her grave (as I will have
> to do my uncle's), I want to visit with my
> grandmother (not that any of us have any
> control over death, I could very well go
> before her), that is something I just don't
> want to live with.

*Id*.

That same day, Plaintiff met with Defendant's Secretary-
Treasurer and head of its Finance Department, Ms. Patricia
Barney, in order to discuss her leave request.  In an affidavit,
Ms. Barney states that Plaintiff cited several reasons for
requesting three weeks leave, including that her family had
already planned a Christmastime vacation in Jamaica, that they
had already purchased airline tickets, that she would incur a

penalty if she altered her flight itinerary, and that she wanted to visit her grandmother. *See* Paper 16, Ex. 1 ("Barney Aff."), ¶ 8. Ms. Barney also attests that Plaintiff stated that she would be taking the requested three weeks leave regardless of whether Defendant approved it. *Id.*, ¶ 10. At that point, Ms. Barney informed Plaintiff that if she stayed beyond the period approved, she would be absent without approved leave (AWOL) and would face termination. *Id.*[1] In lieu of granting Plaintiff's full request, Ms. Barney informed her that she could approve either a three-week leave request for a different time period, or a shorter amount of leave for December, specifically December 12 through December 20, 2002. After inquiring about transferring out of the Payroll Office, which was not possible at that time, Plaintiff submitted a request for leave for the time period offered by Ms. Barney, which was subsequently approved. *See* Plaintiff's Decl., ¶ 12; Barney Aff., ¶ 12.

On December 12, 2002, as scheduled, Plaintiff and her family flew to Jamaica. Upon arriving, Plaintiff immediately visited

---

[1] Plaintiff does not dispute that she made such a declaration to Ms. Barney, or that Ms. Barney responded with a warning. However, Plaintiff attests that she does "recall telling [Ms. Barney] that [her] grandmother was very ill . . . and that [she] was very close to her because she had raised [Plaintiff] as a child." Plaintiff's Decl., ¶ 11. She further attests that she "needed to spend some time devoted to taking care of her." *Id*.

her grandmother, who lived with Plaintiff's aunt.  Plaintiff's Decl., ¶ 14; Paper 16, Ex. 2 ("Plaintiff's Dep.") at 17–18. That same day, Plaintiff learned that her grandmother had sustained a "small stroke" a few days earlier.  Plaintiff's Dep. at 18.  Moreover, upon seeing her grandmother's living conditions, which Plaintiff described as "dilapidated," she decided it was necessary for her to secure another living arrangement for her.  *Id.* at 21–23.

On Thursday, December 19, 2002, at 6:35 p.m., seven days after first arriving in Jamaica, Plaintiff sent an e-mail to Ms. Barney that stated in part, "I am requesting an extension of sick leave because my grandma is very ill and I am in the process of finding a home for her."  Plaintiff's Decl., ¶ 16. The following morning, December 20, Ms. Barney responded via e-mail as follows:

> Cynthia,
> I am sorry to hear about your grandmother; however, as was indicated when you requested your leave, we were unable to approve more than the 12/12 – 12/20 time period due to work program demands.  We had offered that you visit at a different time of year, if you desired more time.  You agreed to the time approved.  If that time is exceeded, you will be absent without leave.  As we discussed, that would result in termination of your employment.  I am truly sorry that I cannot approved [sic] your request.

*See* Barney Aff., Attach. 1. Thus, under the original approved leave request, Plaintiff was due to return to work the following Monday, December 23, 2002.

On that Monday, Plaintiff failed to return to work. Rather, Plaintiff responded via e-mail from Jamaica. In her e-mail, Plaintiff stated that when she left for Jamaica she "had no idea the condition" her grandmother was in, that she felt "the need to find a home for [her] grandmother," and that she was "trying to place her in a home." *See* Barney Aff., Attachs. 2–5. She also stated in this e-mail that her "grandmother actually raised [her]," and that she felt "the need to find her a safe home." *Id*. At this point, she requested that Ms. Barney check to see if Defendant's Merit Rules would cover an extension of time to take care of her grandmother. *Id*.

That same day, Ms. Barney responded to Plaintiff's latest e-mail, recounting the discussion they had had in November concerning Plaintiff's original leave request. Ms. Barney reminded Plaintiff that when Plaintiff stated she was "going to take [her] requested annual leave even if it wasn't approved," Ms. Barney informed her that she would be AWOL and would lose her job. She also indicated that although Plaintiff stated at that time she was "close to [her] grandmother," she did not mention that "she had raised [Plaintiff.]" *Id*. To that

6

assertion, Ms. Barney informed Plaintiff that she believed the
Merit Rules "provide for sick leave up to 80 hours for immediate
family described as a spouse, a child or parents." She further
advised Plaintiff that although she "did not know if this could
be applied to [Plaintiff's] grandmother, if she raised
[Plaintiff]," she should "contact the Personnel Office to
determine that answer." *Id*. She concluded her e-mail by
informing Plaintiff that her status remained AWOL, that the
Merit Rules provide for termination if the abandonment continued
for a period of three days, but that she would "consider any
information" Plaintiff could provide before making an ultimate
decision. She also reiterated that Plaintiff "may wish to
contact the Personnel Office for additional guidance." *Id*.

Although Ms. Barney sent the above referenced e-mail on
Monday, December 23, Plaintiff did not respond until Saturday,
December 28, 2002. In another e-mail sent from Jamaica,
Plaintiff stated, apparently in response to Ms. Barney's comment
regarding Defendant's Merit Rules and its applicability to a
grandparent, "And yes, I grew up with my grandmother." *Id*.,
Attachs. 2-5. Plaintiff also sent this e-mail to Ms. Trudye
Johnson, Defendant's Executive Director. *See id.* Of Ms.
Johnson, Plaintiff requested that she look into the matter of
whether the Merit Rules would cover her situation. *Id*. She

7

also indicated in her e-mail that she was making final arrangements for her grandmother and that should could be back in the office by January 2, 2003. *Id*. Because this e-mail was sent on a Saturday, Ms. Barney did not receive it until the next work day, Monday, December 30, 2002.

Plaintiff returned from Jamaica on December 31, 2002. On January 3, 2003, Ms. Barney sent a letter to Plaintiff at her home, both by courier and first-class mail, notifying her of Defendant's intent to terminate her employment. *See id.*, Attach. 6 ("Notice Letter"). In this five-page letter, Ms. Barney thoroughly explained the basis for Defendant's decision, which, in essence, was Plaintiff's absence from work well beyond the approved leave time. It is in this letter that rights under the Family and Medical Leave Act, which is at the heart of this action, were first explicitly mentioned. Ms. Barney wrote:

> In accordance with The Merit System Rules and Regulations, . . . you have five (5) work days from the receipt of this notice within which to provide me with your response. It may be either oral or written and will be considered before any final action is taken. In addition, if you contend that your absence is covered for any reason under the Family and Medical Leave Act, you should submit all of the Commission FMLA forms that I have enclosed. In this case, you should also explain in reasonable detail whether, and, if so, when and how your grandmother actually stood in the role of your parent during childhood.

*Id.* at 5.   In addition, Ms. Barney informed Plaintiff that should she "find that [Plaintiff's] response to this letter is satisfactory, [she would] not be dismissed."  *Id.*

The following day, Plaintiff sent a letter to Ms. Barney, in which she indicated that she was in the process of completing the FMLA forms, one of which was a health certification form that Plaintiff had sent to Jamaica to have completed.  *Id.*, Attach. 7.   With respect to her relationship with her grandmother, Plaintiff wrote:

> I am the first grandchild for [her].  During my childhood my grandmother was always instrumental in my life.  My mother was around but I was always with my grandmother. I slept with her, always in a fight with my aunt to sleep directly [with] my grandmother as she always slept at the edge of the bed. My grandmother fed me, take me to church on Saturdays, and comb my hair, as I stated she played a major role in my upbringing.
>
> . . . .
>
> In the payroll office I have always spoken of my grandmother and when I ask for the vacation, the primary reason was to see my grandmother.
>
> I have always taken care of my grandmother without asking others what they are doing, I am always obligated to take care of her.  My grandmother was always in my life from childhood during my first pregnancy, after, and always.  There is nothing too good that I have that I would not give to my grandmother.

*Id*.   Shortly  thereafter,  on  January  10,  2003,  Ms.  Barney
requested  that  Plaintiff  meet  with  her  in  her  office.    Ms.
Barney  avers  that  the  purpose  of  this  meeting  was  to  give
Plaintiff  another  opportunity  to  fully  explain  the  relationship
between  herself  and  her  grandmother  in  order  to  determine  if  her
grandmother  "'stood  in  the  place  of'  her  parents  so  as  to  be  a
legally  recognized  relationship  under  the  FMLA."    Barney  Aff.,
¶  24.    According  to  Ms.  Barney,  Plaintiff  indicated  at  this
meeting  that  she  felt  a  sense  of  duty  to  help  her  grandmother
because  she  had  played  a  role  in  her  childhood,  and  that
"everyone  [had]  helped  everyone"  when  Plaintiff  was  growing  up.
*Id*.    Ms.  Barney  then  asked  Plaintiff  if  she  had  any  other
information  to  support  her  position,  which  Plaintiff  indicated
she  did  not.    *Id*.

No  decision  was  made  at  this  meeting,  but  shortly
thereafter,  Ms.  Barney  concluded  that  based  on  the  information
provided  by  Plaintiff,  her  relationship  with  her  grandmother  did
not  qualify  her  for  leave  under  the  FMLA.    On  January  17,  2003,
Plaintiff  received  a  letter  informing  her  of  Defendant's  final
decision.    *See*  Paper  16,  Attach.  8  ("Final  Dismissal  Letter").
In  pertinent  part,  the  letter  stated:

> In  an  effort  to  afford  you  every  benefit  of
> the  doubt,  we  have  also  considered  whether
> your   Grandmother's   unfortunate   health

10

> situation qualifies for consideration under
> the FMLA.  Generally, the FMLA normally does
> not apply with respect to leave occasioned
> by a grandparent's health problem.   The
> exception to this general rule arises when a
> grandparent is recognized legally as the
> employee's parent.    Your letters and
> statements make it clear that this simply is
> not the case and the FMLA has no application
> in [sic] here.  While I have every reason to
> believe that you are close to your
> Grandmother and spent a great deal of time
> together during your childhood, this is
> simply not the sort of relationship covered
> under the law.

*Id*.  Plaintiff subsequently appealed Ms. Barney's decision to

Defendant's Merit System Board, which is comprised of outside

personnel professionals.  Barney Aff., ¶ 28.  On July 15, 2003,

a full administrative evidentiary hearing was held on the

matter, and on August 20, 2003, the Board denied Plaintiff's

appeal.

## II.  Standard of Review

It is well established that a motion for summary judgment

will be granted only if there exists no genuine issue as to any

material fact and the moving party is entitled to judgment as a

matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  In other words, if there clearly

exist factual issues "that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor

of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.

*See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The inquiry involved on a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252. Where the movant also bears the burden of proof on the claims at trial, as Plaintiff here, she "must do more than put the issue into genuine doubt; indeed, [she] must remove genuine doubt from the issue altogether." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (internal quotation omitted), *cert. denied*, 530 U.S. 1204 (2000); *see also Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 820, 822 (D.Md. 1998) (evidentiary showing by movant "must be sufficient for the court to hold that no reasonable trier of fact could

find other than for the moving party") (internal quotation and italics omitted).  Summary judgment will not be appropriate unless the movant's evidence supporting the motion "demonstrate[s] an absence of a genuine dispute as to every fact material to each element of the movant's claim and the non-movant's response fails to raise a genuine issue of material fact as to any one element."  *McIntyre v. Robinson*, 126 F.Supp.2d 394, 400 (D.Md. 2000) (internal citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted); *see also havePower, LLC v. Gen. Electric Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).  The court reviews each motion under the familiar standard for summary judgment, *supra*.  The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A *Federal Practice & Procedure* §2720.

14

## III. Analysis

Plaintiff contends that Defendant interfered with her FMLA rights when it "den[ied] her the leave extension requested" in her December 19, 2002 e-mail, *see* Paper 13 at 14, which led to her termination for being "AWOL for the very time period that Plaintiff was seeking FMLA leave." *See id.* at 16.[2]  In support of her motion for summary judgment, she argues that it is undisputed that she was entitled to leave under the FMLA in order to take care of her ailing grandmother, whom she asserts "basically raised [her] as a child." *See* Plaintiff's Aff., ¶ 7. Defendant has filed a cross-motion for summary judgment, arguing

---

[2] Although both parties devote a few pages in their respective briefs to the standards applicable to an FMLA retaliation charge, as Defendant correctly notes, "no retaliation claim is pleaded in the Complaint." *See* Paper 16 at 26 n.7; Paper 1, ¶ 17 (alleging that "Defendant's termination of Plaintiff . . . violated the FMLA's provisions at 29 U.S.C. Sec. 2615(a)(1) [which provide that] [i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA]"); *see also Wheeler v. Pioneer Developmental Services, Inc.*, 349 F.Supp.2d 158, 169 (D.Mass. 2004) (finding that "[h]aving qualified and applied for FMLA leave, [the plaintiff] was entitled to receive it," so that "[w]hen [the defendant] discharged [her] from her employment for taking the leave [and thereby being deemed absent from work without authorization,] it interfered with her rights under the FMLA"); *Miller v. AT & T*, 60 F.Supp.2d 574, 578 (S.D.W.Va. 1999) (*Miller I*) (construing Plaintiff's termination claim under the FMLA as one for unlawful denial and interference and not retaliation where the plaintiff was terminated for excessive absences accrued when the defendant erroneously concluded that they did not qualify as FMLA leave), *aff'd*, 250 F.3d 820 (4th Cir. 2001).

that: (1) Plaintiff's grandmother does not qualify as a "parent" under the FMLA; (2) Plaintiff failed to provide adequate notice of her need for FMLA leave; (3) Plaintiff's request was not made "in order to care for" her grandmother's serious health condition; and (4) Plaintiff was terminated for reasons unrelated to her FMLA request.  Defendant also contends that even if it is not entitled to summary judgment on Plaintiff's FMLA claim, it is entitled to partial summary judgment as to Plaintiff's request for liquidated damages.  For the following reasons, Plaintiff's motion for summary judgment will be denied, and Defendant's motion will be denied in part and granted in part.

### A.   Whether Plaintiff's grandmother qualifies as her "parent" under the FMLA

"[T]he FMLA creates both substantive and proscriptive rights." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364 (4th Cir. 2005).  The substantive rights include an employee's right to take up to twelve weeks of unpaid leave in any one-year period in order to care for a parent who has a serious health condition.  29 U.S.C. § 2612(a)(1)(C).  "The proscriptive rights include an employee's right not to be discriminated or retaliated against for exercising substantive FMLA rights or for otherwise opposing any practice made unlawful by the Act."

16

*Taylor*, 415 F.3d at 364.  Under the FMLA, "parent" is defined as "the biological parent of an employee or an individual who stood in loco parentis to an employee when the employee was a son or daughter."  29 U.S.C. § 2611(7).  Although the statute does not define the term "in loco parentis," the relevant Department of Labor regulations provide, "Persons who are 'in loco parentis' include those with day-to-day responsibilities to care for and financially support a child, or, in the case of an employee, who had such responsibility for the employee when the employee was a child.  A biological or legal relationship is not necessary."  29 C.F.R. § 825.113(c)(3).

As the plain language of the FMLA does not authorize FMLA leave for the care of grandparents, Plaintiff could only be entitled to FMLA leave to care for her grandmother if she stood in loco parentis to Plaintiff.  *See Krohn v. Forsting*, 11 F.Supp.2d 1082, 1092 (E.D.Mo. 1998).[3]  Thus, Plaintiff bears the burden of putting forth sufficient evidence demonstrating that her grandmother qualifies as her "parent" under the FMLA.  *Cf.*

---

[3] Although the court in *Krohn* stated the requirement that a plaintiff would only be entitled to FMLA leave to care for her grandmother if the grandmother stood in loco parentis to her, it did not have to address the issue, or consider what kinds of facts tend to prove such an entitlement because the plaintiff "presented no evidence and indeed [did] not argue that her grandmother stood in loco parentis to her." *Krohn*, 11 F.Supp.2d at 1092.

*Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001) ("[T]he district court correctly required [the plaintiff] to prove that she was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered.") (citing *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997) (holding that FMLA interference suits are to be resolved "by asking whether the plaintiff has established, by a preponderance of the evidence, that he is entitled to the benefit he claims")).

In response to Plaintiff's assertion in her December 23 e-mail that her grandmother "raised" her, Defendant sought more information from Plaintiff that might demonstrate how her grandmother "actually stood in the role of [her] parent during childhood." *See* Notice Letter. In support of her assertion, Plaintiff wrote:

> I am the first grandchild for [her]. During my childhood my grandmother was always instrumental in my life. My mother was around but I was always with my grandmother. I slept with her, always in a fight with my aunt to sleep directly [with] my grandmother as she always slept at the edge of the bed. My grandmother fed me, take me to church on Saturdays, and comb my hair, as I stated she played a major role in my upbringing.
>
> . . . .
>
> In the payroll office I have always spoken of my grandmother and when I ask for the

18

> vacation, the primary reason was to see my
> grandmother.

Paper 16, Attach. 7.   In addition, for purposes of this
litigation, Plaintiff made the following declaration:

> I was very close to my grandmother because
> she had basically raised me as a child.   My
> mother was only 16 years old and still
> living at home when she was pregnant with
> me, and my grandmother was the one who
> financially provided for both of us.   I was
> much closer to my grandmother than my mother
> during my formative years and slept in the
> same bed with her for the first 12 years.
> With the exception of spending a year living
> with my dad (when I was about 4 years old)
> and then while attending high school, when
> my mother and I lived separately from my
> grandmother, I spent my entire growing up
> period with my grandmother, who was the one
> who financially provided for me.   I also
> returned to live with her after I too became
> pregnant at age 16 when my mother kicked me
> out   of   her   residence   because   of   my
> pregnancy.   As the latter incident evinces,
> my grandmother was the one who I relied upon
> most for emotional and financial support as
> I was growing up and I love her as dearly as
> if she were my own mother.

Plaintiff's Decl., ¶ 7.   This declaration, however, dramatically

expands the information provided to Defendant during the time

Plaintiff was seeking FMLA leave.   Defendant contends that "the

information   supplied   in   support   of   her   request   did   not

demonstrate   that   her   grandmother   qualified   as   her   'parent'

within the meaning of the FMLA," and that it was "devoid of

facts demonstrating that her grandmother 'stood in place of' her

mother, particularly in light of her mother's admitted presence in the home." *See* Paper 16 at 11, 17.

Because Plaintiff relies on information not previously presented to her employer, a potentially critical question in this case is whether Plaintiff may support her claim with evidence not shared with her employer at the time leave was requested and, thus, prior to it concluding that she did not qualify for FMLA leave, or whether she will be limited only to that evidence which she provided to Defendant prior to its making its decision. Defendant suggests that Plaintiff's burden is to establish that the information provided to it *at the time it made its decision* demonstrates that her grandmother stood in loco parentis to her. However, Defendant has not cited any case law to support that assertion, and neither the statute, regulations, nor cases considered by the court speak directly to this issue. Therefore, it is not clear whether Plaintiff should be allowed to present evidence of a qualifying relationship beyond what was provided to her employer in order to meet her burden, or if she should be limited to demonstrating a qualified relationship based only on the information and evidence provided to Defendant when requesting FMLA leave. However, even if Defendant's position is correct, and, therefore, Plaintiff must prove that the information provided to Defendant at the time it

made its decision demonstrates her entitlement to FMLA leave,
the court concludes that that evidence is enough to create a
triable issue as to whether she was entitled to FMLA leave in
order to care for her grandmother.  Conversely, even with the
new information provided by Plaintiff in her declaration and
deposition testimony, the evidence is not so conclusive as to
require a finding, as a matter of law, that Plaintiff's
grandmother stood in loco parentis to her.[4]

"The term 'in loco parentis,' according to its generally
accepted common law meaning, refers to a person who has put
himself in the situation of a lawful parent by assuming the
obligations incident to the parental relation without going
through the formalities necessary to legal adoption.  It
embodies the two ideas of assuming the parental status and
discharging the parental duties." *Niewiadomski v. United
States*, 159 F.2d 683, 686 (6th Cir. 1947).  Black's Law
Dictionary defines the phrase "in loco parentis" as "[i]n the
place of a parent; instead of a parent; charged, factitiously,
with a parent's rights, duties, and responsibilities." *Black's
Law Dictionary* 787 (6th ed. 1990).  The mere fact of being a

---

[4] Although the court need not decide at this stage on what
evidence Plaintiff may rely in order to meet her burden, as this
case proceeds, it will become necessary to revisit this issue.

grandparent does not necessarily give rise to in loco parentis
status. 28 Am.Jur.2D *Proof of Facts* 545, § 7 (1981). Indeed,
a grandparent may assume the care and custody of a grandchild
under circumstances which are consistent with the existence of
the natural relationship between parent and child without any
intention to sever that relationship. *Id*. (citing *Strunk v.
United States*, 80 F.Supp. 432 (E.D.Ky. 1948), *Sutton v. Menges*,
44 S.E.2d 414 (Va. 1947)).

"The key in determining whether the relationship of in loco
parentis is established is found in the *intention* of the person
allegedly in loco parentis to assume the status of a parent
toward the child." 28 Am.Jur.2D *Proof of Facts* 545, § 2. The
intent to assume such parental status can be inferred from the
acts of the parties. *Id*. "Other factors which are considered
in determining whether in loco parentis status has been assumed
are (1) the age of the child; (2) the degree to which the child
is dependent on the person claiming to be standing in loco
parentis; (3) the amount of support, if any, provided; and (4)
the extent to which duties commonly associated with parenthood
are exercised." *Id*.

Here, Plaintiff's evidentiary support for her proposition
that she has established as a matter or law an in loco parentis

22

relationship with her grandmother is not "sufficient for the court to hold that no reasonable trier of fact could find other than for" Plaintiff on this issue. *See Proctor*, 32 F.Supp.2d at 822. However, as stated above, she has put forth enough at this stage to create a genuine issue of material fact as to whether her grandmother stood in loco parentis to her. Not only had Plaintiff informed Defendant that her grandmother had "raised" her as a child, but she had also informed it that her grandmother "fed" her and that she slept with her, indicating that Plaintiff indeed resided with her grandmother during her childhood and that her grandmother provided certain necessities for her. Ms. Barney also attests that Plaintiff told her during their January 10 meeting prior to Defendant making its final decision that her grandmother "played a role in Ms. Dillon's childhood, and that 'everyone [had] helped everyone' when [Plaintiff] was growing up." Barney Aff., ¶ 25. Although these statements may not undisputedly demonstrate that her grandmother stood in loco parentis to her, the court cannot say, as a matter of law, that they fall short. The definitions of the term "in loco parentis" are often context specific, and no court-or regulation-has defined the term exhaustively. For some purposes, the presence of a biological parent in the home may foreclose another from holding the status of "in loco parentis."

23

But for others, such as this case, the presence of Plaintiff's mother in the home is not fatal to Plaintiff's claim.  In that home, as Plaintiff describes it, it is possible that her grandmother also stood "in loco parentis" at least for some portion of Plaintiff's childhood.  Neither the language of the FMLA, nor the relevant regulations, put a minimum time requirement on the status.  On the other hand, Plaintiff's mother was present and there is no evidence that she abandoned her role as a parent.  While Plaintiff's grandmother provided shelter and financial support, the tasks described by Plaintiff may fall somewhat short of taking on a parental role.

Congress made clear that one of the purposes of the FMLA was "to balance the demands of the workplace with the needs of families, . . . and to promote national interests in preserving family integrity."  29 U.S.C. § 2601(b)(1).  Although Plaintiff has not removed all doubt from the issue, she has put forth sufficient evidence to create a triable issue as to whether the information provided to Defendant, or that provided in discovery, demonstrates a relationship that falls within the ambit of the rights accorded under the FMLA.  Thus, neither party is entitled to summary judgment on this issue and both motions on this issue will be denied.

24

## B.    *Whether Plaintiff provided timely notice*

Defendant also moves for summary judgment on the grounds that Plaintiff's request for leave under the FMLA was not timely, thus, precluding her from asserting any rights under the Act.   Although the FMLA requires employees to notify their employers of the need for foreseeable leave, 29 U.S.C. § 2612(e)(1), the act itself does not contain a notice requirement for unforeseeable leave. The regulations, however, provide that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable." 29 C.F.R. § 825.303(a).[5] It is expected that the employee "will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances . . . ." *Id*. Moreover,

> [t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is

─────────────────────

[5] Even when the need for leave is foreseeable, thereby ordinarily requiring an employee to provide at least 30 days notice, "[i]f 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). "'As soon as practicable' means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." *Id*. § 825.302(b).

25

> needed. The employer will be expected to
> obtain any additional required information
> through informal means. The employee . . .
> will be expected to provide more information
> when it can readily be accomplished as a
> practical matter, taking into consideration
> the exigencies of the situation.

*Id.* § 825.303(b); *see also Rhoads,* 257 F.3d at 382–83. "The
critical question is whether the information imparted to the
employer is sufficient to reasonably apprise it of the
employee's request to take time off for [an FMLA-qualifying
need.]" *Manual v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th
Cir. 1995); *see also Brohm v. JH Props., Inc.*, 149 F.3d 517, 523
(6th Cir. 1998); *Darboe v. Staples, Inc.*, 243 F.Supp.2d 5, 17
(S.D.N.Y. 2003).

Here, Plaintiff has put forth sufficient evidence to create
a genuine issue as to whether she timely imparted enough
information to Defendant to reasonably apprise it of her request
for additional time off to take care of her ailing grandmother.
Indeed, after Plaintiff informed Defendant that her grandmother
was in worse medical condition than she had first anticipated,
and that she had "actually raised [her,]" Defendant, on its own
initiative, informed Plaintiff that her request may qualify as
covered leave under either its Merit Rules or the FMLA.
Although it initially denied Plaintiff's request for an
extension of leave, which caused her to be AWOL between December

26

23, 2002 and January 1, 2003, *see* Notice Letter at 4, Defendant gave Plaintiff an opportunity to demonstrate that her absences qualified under the FMLA before ultimately terminating her on January 17. Together with the Notice Letter, Ms. Barney provided FMLA request forms for Plaintiff to complete and submit "if [she] contend[ed] that [her] absence [was] covered for any reason under the Family and Medical Leave Act." *See id.* at 5. Ms. Barney also indicated that if she found Plaintiff's "response to this letter . . . satisfactory," Plaintiff "[would] not be dismissed." *Id.* It is undisputed that Plaintiff submitted these forms, as well as met with Ms. Barney, before she was terminated. Ultimately, however, Defendant concluded that based on the information provided by Plaintiff, she was not entitled to FMLA leave, and her employment with Defendant was terminated. *See* Final Dismissal Letter. Thus, the evidence creates a factual issue as to whether Plaintiff imparted to Defendant information "sufficient to reasonably apprise it of the employee's request to take time off for [an FMLA-qualifying need.]" *Manual,* 66 F.3d at 764. Accordingly, Defendant's contention that Plaintiff did not timely assert her FMLA rights is simply unavailing, and its motion for summary judgment on this issue will be denied.[6]

---

[6] Although Plaintiff moved for summary judgment, her motion
(continued...)

### C.   Whether Plaintiff's request was made "in order to care for" her grandmother's serious health condition

Defendant also moves for summary judgment on the basis that Plaintiff has put forth no evidence that her grandmother's alleged serious health condition was the reason she requested an extension of leave.   Paper 16 at 22.   As mentioned above, the FMLA entitles certain eligible employees 12 workweeks of leave "[i]n order to care for" a parent who has a serious health condition.   29 U.S.C. § 2612(1)(D).   The Act provides that an employer may require that a request for leave in order to care for a parent "be supported by a certification issued by the health care provider of the . . . parent . . . ."   29 U.S.C. § 2613(a).   The certification is sufficient if it states the date on which the serious health condition commenced, the probable duration of the condition, the appropriate medical facts within the knowledge of the health care provider regarding the condition, and "a statement that the eligible employee is needed to care for the . . . parent and an estimate of the amount of time that such employee is needed."   *Id*. § 2613(b)(1)-(4)(a).

---

[6](...continued)
dealt exclusively with the issues of her grandmother's relationship with her and her request for liquidated damages. She has not attempted to argue that, as a matter of law, the court must find that she provided adequate notice.   In any event, such an argument would fail.

In addition, the relevant Department of Labor regulations provide:

> (a) The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.
>
> (b) *The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.*

29 C.F.R. § 825.116(a)-(b) (emphasis added).

Defendant's argument is less about whether Plaintiff's grandmother actually had a serious health condition and more about whether that condition was the reason for Plaintiff's extended leave request. In other words, Defendant asserts that Plaintiff did not seek an extension of leave "in order to care for" her suffering grandmother's serious health condition. Although Defendant concedes in its brief that in December of 2002, Plaintiff "identified the need to secure an assisted living environment for her grandmother . . . as the reason for needing additional time," *see* Paper 16 at 22, it points to the

following exchange between Defendant's counsel and Plaintiff during her deposition as undermining her position:

> Q.  You had referred to seeking an assisted living arrangement for your grandmother while you were in Jamaica; is that correct?
> A.  Yes.
> Q.  You had referenced – had you observed an environment where your grandmother was living that you didn't find acceptable?
> A.  Right.
> Q.  That's correct?
> A.  Correct.
> Q.  What about the environment was unacceptable in your eyes?
> A.  It's just that the living conditions wasn't what I liked for her.
> Q.  What about the living situation wasn't what you liked?
> A.  The situation where she was living wasn't too healthy of an environment for her and I need[ed] to move her out of that environment.
> Q.  What about the environment was unhealthy in your estimation?
> A.  It is just that the condition wasn't right.  The setting wasn't right.  It was of a dilapidated condition, then, in other words.
> Q.  So you weren't satisfied with the house?
> A.  Right.
> Q.  And was that what caused you to seek another living arrangement for her?
> A.  Yes.
> Q.  Did you ultimately secure another living arrangement for her?
> A.  Yes, we did.  My aunt advised me of some place. We did, but I had to scrap that.
> Q.  And what was the living arrangement that you had identified?
> A.  It was a better arrangement where my aunt would go to the same place where my grandmother would be and a better setting.
> Q.  From what – a nicer house?
> A.  Right.

Plaintiff's Dep. at 21–23.

Defendant contends this testimony demonstrates that "the purported purpose of the extended leave was, at most, to obtain better living accommodations for her grandmother, which, while laudable, is not a sufficient basis for leave under the FMLA." Paper 16 at 24.  It asserts that Plaintiff has failed to demonstrate a nexus between her grandmother's health condition and the need to find her an alternative living arrangement.  *Id*. The court disagrees.  Plaintiff testified in her deposition that she believed the risks associated with her grandmother's then-living conditions were greater since her stroke on December 9. Plaintiff's Dep. at 32.  She stated that she was concerned about the ability and need for other people to observe her grandmother after the stroke, and was seeking an arrangement where more people would be around to observe her condition.  *Id*. at 33.  In her declaration, Plaintiff avers that she spent her "entire time in Jamaica attending to [her] grandmother's needs" and that "[her] aunt and [she] were actively looking for a place where she could stay with better facilities and with more people available to keep an eye on [her.]"  Plaintiff's Decl., ¶ 14. She stated that she "immediately recognized that [she] had to move [her] grandmother to better living conditions—at a minimum, a place with an indoor toilet and with more people available to assist her."  *Id*., ¶ 15.

Moreover, along with the FMLA forms that Plaintiff submitted to Defendant was a medical certificate from her grandmother's health care provider that stated she suffered a "small stroke" days before Plaintiff arrived, and that she would be incapacitated for approximately two to three weeks. *See* Paper 13, Ex. 5.  The certificate provided that she would require "assistance for basic medical or personal needs or safety or for transportation" during this period of incapacity.  *Id*. Although Defendant objects to the portion of the certificate indicating that Plaintiff "will need to look after her and find a caregiver" as being outside the treating physician's personal knowledge, the certificate, nonetheless, states all the information explicitly provided for in § 2613(b).  Even absent this latter portion of the certificate, however, Plaintiff's deposition and declaration provide enough evidence to create a factual dispute as to whether Plaintiff's request for a leave extension was in fact "in order to care for" her grandmother whom she asserts, and the medical certificate confirms, had a "serious health condition."  Although a jury may find that Plaintiff's request was not "in order to care for" her grandmother's serious health condition, she has created a

triable issue as to this element.[7]   Accordingly, Defendant's motion for summary judgment on this ground will be denied.

### D.   Whether Plaintiff was terminated for reasons unrelated to her FMLA request

Defendant also moves for summary judgment on the basis that Plaintiff was terminated for reasons unrelated to her FMLA request.  It cites to the Notice and Final Dismissal Letters as demonstrating alternative non-FMLA related grounds for terminating Plaintiff's employment.  *See* Notice Letter; Final Dismissal Letter.  These letters refer not only to Plaintiff's status as AWOL between December 23, 2002 and January 1, 2003 as the reason for its decision, but also her "detrimental and disruptive" behavior and her failure to perform her duties.  In the Merit System Board's dismissal of her appeal, the Board referred to her refusal to return on December 23, 2002 as "insubordination."  Although it is true that these letters refer

---

[7] Defendant also makes much of the fact that Plaintiff's aunt (the grandmother's daughter) lived with Plaintiff's grandmother both before and after her visit, and that she also cared for the grandmother's medical and other needs. Plaintiff's argument suggests that because the aunt was also present, Plaintiff was not needed to care for her grandmother. However, the regulations specifically provide that the term "needed to care for" includes situations where the employee may be needed to fill in for others who are caring for the family members.  29 C.F.R. § 825.116(b).  Thus, her aunt's presence does not necessarily preclude Plaintiff from arguing that she was also "need[ed] to care for" her grandmother.

to reasons other than her AWOL status as a basis for terminating Plaintiff, all of these reasons are inextricably intertwined with her request for FMLA leave, the denial of which resulted in Plaintiff's termination.   Indeed, after Ms. Barney chronicled the events surrounding Plaintiff's initial request for 3-weeks leave, and her subsequent request for an extension, she explicitly stated that if she found Plaintiff's response to the Notice Letter satisfactory, including her explanation as to how the latter request may qualify under the FMLA, Plaintiff would not be dismissed. *See* Notice Letter at 5.   Moreover, in the Final Dismissal Letter, Ms. Barney stated that "after carefully consider[ing] the record on this matter," including "whether [Plaintiff's] Grandmother's unfortunate health situation qualifies for consideration under the FMLA," she could find no reason justifying changing her termination decision. *See* Final Dismissal Letter.   With respect to the FMLA decision, Ms. Barney stated that although she had every reason to believe Plaintiff was close to her grandmother, "this is simply not the sort of relationship covered under the law." *Id*.   In light of Ms. Barney's statements in these two letters, particularly that Plaintiff would not be dismissed if she found her response to the Notice Letter satisfactory, Defendant's assertion that a "meritorious FMLA entitlement could change the outcome on the

absent-without-leave component, [but] the insubordination basis
[would be] unaffected" is tenuous at best.    As Plaintiff
correctly notes in her brief "Defendant's subsequent termination
of her for allegedly being insubordinate in taking the extended
leave either stands or falls on whether it was FMLA qualifying
leave."   Paper 18 at 16.   Accordingly, Defendant's motion for
summary judgment on the grounds that Plaintiff was terminated
for reasons unrelated to her FMLA request is denied.

### E.   *Whether Plaintiff is entitled to liquidated damages*

Finally, Defendant moves for partial summary judgment on
Plaintiff's request for liquidated damages, arguing that even if
material factual disputes preclude summary judgment on the other
issues, liquidated damages are not appropriate in this case.   "A
plaintiff who makes out a successful claim under the FMLA is
generally entitled to an award of liquidated damages, which is
an amount equal to the amount of back pay plus interest at the
prevailing rate."   *Miller v. AT & T*, 83 F.Supp.2d 700, 709
(S.D.W.Va.   2000)   (*Miller   II*)   (citing   29   U.S.C.   §
2617(a)(1)(A)(iii)).   The court, in its discretion, can reduce
or eliminate the amount of liquidated damages if the employer
proves that it acted in good faith and had reasonable grounds
for taking the action that constituted the violation of the
FMLA.   *Id*.   The defendant bears the burden of proving that it

acted in good faith and upon reasonable grounds. *Cf. Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 548 (4th Cir. 1998); *Mayhew v. Wells*, 125 F.3d 216, 221 (4th Cir. 1997).

Here, it remains disputed whether Plaintiff qualified for leave under the FMLA. Even if she did, however, the record demonstrates unequivocally that Defendant acted in good faith and had reasonable grounds for believing that its actions were proper. It is undisputed that Defendant not only considered the possibility that Plaintiff's request may have been covered under the FMLA, but it gave Plaintiff repeated opportunities to clarify her relationship with her grandmother in order to demonstrate her entitlement to it. In fact, it was Defendant, not Plaintiff, who first explicitly mentioned the possibility that Plaintiff's absence may be covered under the FMLA and provided to her the necessary forms to submit. Indeed, Defendant bent over backwards to give Plaintiff's leave request every consideration despite its right to be skeptical given Plaintiff's assertion in November 2002 that she would take three-weeks leave whether approved or not.

Plaintiff points to language in the Final Dismissal Letter to support her request for liquidated damages. In that letter, Ms. Barney states that an exception to the general rule that the FMLA does not cover leave to take care of grandparents is where

36

"a grandparent is recognized legally as the employee's parent."
*See* Final Dismissal Letter.    Plaintiff argues that this
statement demonstrates that Defendant was not acting in good
faith because it was holding her to a more stringent standard
for establishing an "in loco parentis" relationship than
provided for in the relevant Labor regulations.   As discussed
above, § 825.113(c)(3) provides that a "biological or legal
relationship is not necessary."   Although Ms. Barney did write
that the exception exists where the grandparent is "recognized
legally as the employee's parent," Plaintiff is reading entirely
too much into this lone statement.   Defendant was not seeking to
hold Plaintiff to a higher or more demanding standard than
required by the language of FMLA or the relevant regulations,
and plainly did not require Plaintiff to provide a court order
designating her grandmother as her legal guardian.   As Defendant
made abundantly clear when it provided Plaintiff the FMLA forms,
it was merely asking Plaintiff to "explain in reasonable detail
whether, and, if so, when and how [Plaintiff's] grandmother
actually *stood in the role of* [her] parent during childhood."
*See* Notice Letter at 5 (emphasis added).   Moreover, Ms. Barney
attests in her affidavit that the purpose of her meeting with
Plaintiff on January 10, 2003, prior to Plaintiff's termination,
was, in part, to seek addition information from her "generally

37

to determine if her grandmother 'stood in the place of' her parents so as to be a legally recognized relationship under the FMLA." Barney Aff., ¶ 24. Although its conclusion regarding Plaintiff's entitlement to FMLA leave may ultimately prove erroneous, the record as a whole demonstrates a pattern of good faith inquiry and consideration regarding Plaintiff's asserted entitlement to FMLA leave. Accordingly, Defendant has met its burden of demonstrating that it "acted in good faith and had reasonable grounds for believing that the FMLA did not apply to [Plaintiff's] absences. Having found that [Defendant] has met its burden of proof, the Court finds that liquidated damages are not appropriate in this case." *Miller II*, 83 F.Supp.2d at 709. Accordingly, Defendant's motion with respect to the issue of liquidated damages will be granted.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied, and Defendant's motion for summary judgment will be denied in part and granted in part. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

August 18, 2005
