**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CYNTHIA DILLON | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. WGC-04-994 |
| | ) | |
| THE MARYLAND-NATIONAL CAPITAL | ) | |
| PARK AND PLANNING COMMISSION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before the court and ready for resolution is Defendant's Motion *In Limine* (Docket No. 35). Plaintiff filed an Opposition (Docket No. 41) and Defendant a Reply Memorandum (Docket No. 42). No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md.).

The Maryland National Capital Park and Planning Commission ("Commission") asks the court to bar the admission of the following:

(1) any information regarding Ms. Dillon's alleged qualification for Family and Medical Leave Act ("FMLA") leave which was not provided to the Commission before Ms. Dillon's employment was terminated on January 17, 2003, and

(2) the medical certification form submitted with Ms. Dillon's FMLA request and any information contained therein.

With regard to issue 1, the Commission notes the bulk of information about Ms. Dillon's qualifications for FMLA leave surfaced when Ms. Dillon filed her Motion for Summary Judgment, almost two years after she was terminated from employment. Citing *Sherrod v.*

1

*Philadelphia Gas Works*, No. 02-2153, 2003 WL 230709 (3d Cir. Jan. 29, 2003), the Commission argues Ms. Dillon's belated information is not pertinent to any alleged FMLA violation in this litigation.

> [T]he Commission could not be expected to act on information it did not have and that was squarely within Ms. Dillon's control.  Under the circumstances, the Commission could not be said to have interfered with Ms. Dillon's FMLA rights by failing to accept a factual justification that was not provided to it until after the close of discovery in this litigation.  Information that was provided for the first time after the alleged interference complained of (termination of employment) is not relevant to the determination of whether those actions constituted an interference.  Obviously, such information could not have been considered by the employer in reaching the decision on the FMLA request on which Plaintiff rests her claim.  Nor is the information relevant to the issue of whether the Commission unlawfully interfered with Ms. Dillon's claimed FMLA rights.

Def.'s Mem. Supp. Mot. Limine ("Def.'s Mem."), at 8-9.

If the court finds this new information relevant, the Commission claims the unfair prejudice and risk of confusion far outweigh any probative value.

In her Opposition Ms. Dillon contends all evidence bearing on the issues of whether her grandmother was *in loco parentis* to her, whether Ms. Dillon was "needed to care for" her grandmother, and whether her grandmother had a serious health condition under the FMLA is clearly relevant under Federal Rule of Evidence 401 and thus admissible under Federal Rule of Evidence 402 since Ms. Dillon has the burden of proof.  In response to the Commission's contention that only the evidence Ms. Dillon presented before her termination is relevant, Ms. Dillon asserts,

> [T]his could only be the case if defendant were challenging whether plaintiff gave sufficient notice to defendant of her need for FMLA leave and was not challenging, additionally, that plaintiff was in fact

2

>   covered by the FMLA.  While any evidence provided substantially after she was terminated would likely not be relevant to show what notice plaintiff provided defendant as to her request for FMLA leave, such evidence is clearly relevant to showing that she was in fact covered by the FMLA and therefore had an "entitlement to the disputed leave" under the statute.

Docket No. 41, at 10.

In its Reply the Commission rejects Ms. Dillon's distinction between providing sufficient notice of her entitlement to FMLA leave and proving her entitlement to FMLA leave.  The Commission claims Ms. Dillon's interpretation, in effect, eliminates the statutory requirement of sufficient notice.  "Plaintiff's urged construction would place employers (particularly those acting in good faith as the Court already found the Commission to be) in the untenable position of either having to grant leave not required by the known facts or risking strict liability later based upon information withheld by the employee at the time of decision."  Docket No. 42, at 2.  With regard to permitting Ms. Dillon to prove her entitlement to FMLA leave with information not provided to her employer before she was terminated, the Commission asserts this would be unfair.

>   It would be fundamentally unfair to effectively charge the Commission with information that was squarely within Ms. Dillon's control and that it was unable to pry out of Ms. Dillon despite repeated efforts.  It would be further fundamentally unfair to permit a jury to conclude the Commission unlawfully interfered with Ms. Dillon's FMLA rights by failing to accept a factual justification that was not provided to it until after the close of discovery in this litigation, more than a year after the decision of which Plaintiff complains.  Under the circumstances, Ms. Dillon should be estopped from now trying to use this information to claim a violation of her FMLA rights.

*Id.* at 3.

This is not the first time this issue has been presented to this Court. Judge Chasanow did not resolve the matter when she denied Ms. Dillon's motion for summary judgment and denied in part and granted in part the Commission's motion for summary judgment.

> [A] potentially critical question in this case is whether Plaintiff may support her claim with evidence not shared with her employer at the time leave was requested and, thus, prior to it concluding that she did not qualify for FMLA leave, or whether she will be limited only to that evidence which she provided to Defendant prior to its making its decision. Defendant suggests that Plaintiff's burden is to establish that the information provided to it *at the time it made its decision* demonstrates that her grandmother stood in loco parentis to her. However, Defendant has not cited any case law to support that assertion, and neither the statute, regulations, nor cases considered by the court speak directly to this issue. Therefore, it is not clear whether Plaintiff should be allowed to present evidence of a qualifying relationship beyond what was provided to her employer in order to meet her burden, or if she should be limited to demonstrating a qualified relationship based only on the information and evidence provided to Defendant when requesting FMLA leave.

*Dillon v. Maryland -National Capital Park & Planning Comm.*, 382 F. Supp. 2d 777, 786 (D. Md. 2005). Although Judge Chasanow did not need to resolve the issue at the pretrial dispositive motions stage, she recognized the necessity of revisiting the issue. *Id.* n.4. With a jury trial scheduled to commence March 21, 2006, the Commission asks this Court to revisit the issue.

Consistent with Judge Chasanow's observations, this Court, upon further review, has not found any cases addressing this precise issue. There are cases however addressing the issue of whether post-termination medical evidence is relevant and admissible.

In *McFall v. BASF Corp.*, 406 F. Supp. 2d 763 (E.D. Mich. 2005), McFall sued her employer for terminating her in violation of FMLA. While employed with BASF, McFall missed work on multiple occasions due to illness. McFall never specified the reason for her

4

absence except to say she was "sick." On one occasion when BASF's nurse examined McFall before clearing McFall to return to work without medical restrictions, the nurse noted McFall had symptoms of an upper respiratory infection. McFall subsequently was terminated by BASF.

In her motion for summary judgment McFall claimed her absences were linked to asthma and/or bronchitis, but also due to Achilles tendinitis, migraines and hypertension. The court noted the latter ailments were never disclosed to BASF before McFall's termination.

> The use of the word "employee" in the FMLA illuminates a significant limitation on the timing of the required notice: It must be provided *during* the employment relationship, not after the employee has been terminated. Thus, for purposes of FMLA notice, the Court must ignore Plaintiff's post-termination claims of health problems, including all of those made during her deposition and in her filings. What is relevant at this stage are Plaintiff's statements to Defendant during the course of her employment relationship.

*Id.* at 768 (citations omitted).

In *Frazier v. IBP, Inc.*, No. C97-0023, 1999 WL 33655745 (N.D. Iowa Feb. 2, 1999), Frazier filed a lawsuit alleging his termination of employment violated the FMLA. To substantiate his serious health condition, Frazier claimed he is entitled to rely on post-termination medical evidence showing he was suffering a serious health condition when he was discharged. "Granted, evidence of the employee's medical condition after he is terminated is relevant to whether the employee suffered from a 'serious health condition' at the time of his termination. However, the medical evidence Frazier contends supports his FMLA claim is for treatment taking place six to eight months or more after his termination and cannot be determinative." *Id.* *4 (citation omitted).

In *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109 (6th Cir. 1997), the Sixth Circuit found admissible to refute a former employee's assertion that he suffered from a serious

health condition evidence that the former employee did not miss any work at his new job due to his illness nor sought medical treatment after being terminated from his previous job.

> [In this case Varity] concedes that it terminated Bauer's employment because of excessive absenteeism, and the question is whether the objective evidence establishes that Bauer had a "serious health condition," thus qualifying for protection under the FMLA. Since the plaintiff has the burden to establish the objective existence of a serious health condition, and subsequent developments are relevant to such an objective inquiry, we may consider Bauer's course of action after his employment was terminated.

*Id.* at 1112.

Similarly, the Seventh Circuit found post-termination medical evidence admissible and rejected defendant-appellant's assertion that the trial judge impermissibly admitted such evidence.

> According to Avon, some of the evidence supporting the verdict should not have been admitted. It objects to the details developed by diagnoses after the discharge. The district judge did not abuse her discretion in admitting this evidence. Avon cannot be charged with knowledge of the future, but these diagnoses also helped the jury understand how Byrne likely had been behaving at work before the discharge, and thus while Avon had time to draw appropriate inferences. That evidence bore not only on the question whether Byrne had a serious medical condition (an essential condition for FMLA leave) but also on the questions whether Avon likely knew of Byrne's need for FMLA leave and whether Byrne had been capable of giving notice himself.

*Byrne v. Avon Products, Inc.*, 125 Fed. Appx. 704, 705 (7th Cir. 2004).

In this case, unlike the Plaintiff in *McFall*, Ms. Dillon is not attempting to present new information such as her grandmother is actually her mother and thus is a qualified family member under the FMLA. Such an assertion, post-termination, would be completely new and would not be admissible because Ms. Dillon did not give "notice" during her employment.

6

Unlike the Plaintiff in *Frazier*, Ms. Dillon is not asking to present to the jury medical information about her grandmother's health six months or more after Ms. Dillon was terminated.

If post-termination medical evidence is relevant to whether an employee had a serious health condition at the time of his termination, *see Frazier*, by analogy, post-termination evidence is relevant to whether Ms. Dillon was qualified to take FMLA leave to care for her grandmother at the time the Commission fired Ms. Dillon. The Commission contends "Ms. Dillon never provided information clarifying her entitlement, but instead provided information that continually moved her farther away from a qualified status." Def.'s Mem., at 10. Even if the Commission's assertion is correct, that fact does not preclude Ms. Dillon from presenting this relevant evidence. Both parties acknowledge Ms. Dillon bears the burden of proving her grandmother had a serious health condition, that Ms. Dillon was needed to care for her grandmother within the meaning of the FMLA and that Ms. Dillon was entitled to coverage under the FMLA.

With regard to the Commission's contention that the post-termination information Ms. Dillon seeks to present is unfairly prejudicial and thus should be excluded under Federal Rule of Evidence 403, the court intends to instruct the jury that the Commission had no knowledge of certain information when it terminated Ms. Dillon's employment. The court is willing to consider any other proposed limiting instructions from the Commission. For the above reasons, the Commission's request to bar the admission of any evidence regarding Ms. Dillon's qualification for leave under the FMLA which was not provided before her termination on January 17, 2003 will be denied.

The second issue concerns the medical certification form Ms. Dillon submitted in response to the Commission's request.  The Commission seeks to exclude this form on multiple grounds.  First, the authenticity of the medical certification form has not been legally established.  Second, even if the medical certification form is authenticated, it must be excluded as inadmissible hearsay and does not qualify under any of the recognized exceptions to the hearsay rule.  Third, the information listed on the medical certification form is not based on personal knowledge.  "The probative value of the document is marginal at best.  It is clear from the document itself that the certification was prepared in retrospect and even at that is inaccurate." Def.'s Mem., at 11.  If the court rejects all of these arguments for excluding the medical certification form, the Commission claims its prejudicial value far outweighs its probative value.

In her Opposition Ms. Dillon asserts, "the medical certification filled out by the grandmother's treating doctor is being used to show what notice of potential FMLA coverage plaintiff provided to defendant at the time of the termination (rather than whether the statements contained in the document are true or not). . . . Since the exhibit is being provided to show notice and not for the truth of the matter asserted therein, it is not hearsay pursuant to Rule 801." Docket No. 41, at 11.  If however Ms. Dillon elects to use the document to prove the truth of the matter asserted, Ms. Dillon contends the medical certification form is admissible under Federal Rules of Evidence 803(4) [Statements for purposes of medical diagnosis or treatment] and 803(6) [Records of Regularly Conducted Activity].

In its Reply the Commission notes, presuming the medical certification form is admissible as non-hearsay evidence to establish Ms. Dillon provided "notice" about her grandmother's serious health condition, "it would not meet her distinct burden to meet her

8

'entitlement' burden of proof on the 'serious health condition' and 'needed to care for' issues that require the expert conclusion of an appropriate medical provider. Therefore, if the medical certification form is not to be offered for its truth, summary judgment should be entered in favor of the Commission at this juncture." Docket No. 42, at 4-5 (footnote omitted). Additionally, the Commission rejects Ms. Dillon's argument that the medical certification form qualifies as a hearsay exception per Federal Rules of Evidence 803(4) and 803(6). The medical certification form does not meet Rule 803(4) because it is a form completed by the medical provider for employment purposes, not information gathered from a patient seeking medical treatment. Regarding Rule 803(6) the medical certification form is not a document generated by the medical provider nor used on a regular basis by the medical provider to make a record.

> The physician did not prepare the record as part of treating the patient, does not rely on it in treating the patient, nor is it essential to ensuring that the patient receives proper medical care. Neither the physician, nor his/her staff, have a duty to prepare the form for the benefit of the patient's medical treatment and diagnosis. Instead of being produced as part of a medical duty to the patient, the certification form was only completed due to the request of a third party facing the prospect of losing her job.

Docket No. 42, at 7.

The court finds the medical certification form does not qualify as an exception to the hearsay rule either under Rule 803(4) or Rule 803(6). Regarding authentication of the form, it is the court's understanding that Ms. Dillon intends to call Dr. Nesbeth who completed the form. The Commission objects because Ms. Dillon did not disclose this witness until January 3, 2006 and objects to Dr. Nesbeth's testimony. Since the Commission is challenging the authenticity of the medical certification form, Ms. Dillon has the burden and is permitted to authenticate through the testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1). If Ms. Dillon

intends to present the medical certification form for non-hearsay purposes, the Commission would object on the ground that Ms. Dillon fails "to meet her 'entitlement' burden of proof on the 'serious health condition' and 'needed to care for' issues that require the expert conclusion of an appropriate medical provider." Document No. 42, at 4-5. The court finds this is a non-issue since Ms. Dillon intends to call Dr. Nesbeth. If the doctor does not testify, the court is willing to reconsider this issue, if necessary, at trial. Lastly, the Commission claims any probative value of the medical certification form is outweighed by prejudice. It is undisputed the Commission provided the medical certification form to Ms. Dillon and requested she have a medical provider complete it. The court finds the probative value outweighs any prejudice. For the reasons stated, the court will deny in part and grant in part the Commission's request to bar the admission of the medical certification form and any information contained therein.

      For the foregoing reasons, an Order will be separately entered denying in part and granting in part Defendant's Motion *In Limine*.

March 3, 2006                                                                                            /s/
_____                                    _____
    Date                                                                          WILLIAM CONNELLY
                                                          UNITED STATES MAGISTRATE JUDGE