**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

CYNTHIA DILLON                                    )
                                                  )
                        Plaintiff,                )
            v.                                    )        Civil No. WGC-04-994
                                                  )
THE MARYLAND-NATIONAL CAPITAL                     )
PARK AND PLANNING COMMISSION                      )
                                                  )
                        Defendant.                )
_____)

## MEMORANDUM OPINION

Pending before the Court and ready for resolution is Plaintiff's Motion to Amend the

Judgment to Include Equitable Relief and for Attorney's Fees (Document No. 61).  Defendant

Maryland National Capital Park and Planning Commission filed an Opposition (Document No.

65), Plaintiff a Reply Brief (Document No. 72), and with the Court's permission, *see* Document

No. 74, Defendant a Supplemental Memorandum (Document No. 73).  A hearing was convened

on January 30, 2007 regarding attorney's fees, costs and prejudgment interest only[1].  The Court

now rules pursuant to Local Rule 105.6 (D. Md. 2004).

## BACKGROUND

On March 25, 2004, Plaintiff filed a Complaint alleging that Defendant terminated her in

violation of the Family and Medical Leave Act ("FMLA").  In August 2002, Plaintiff requested

but was denied three weeks of leave between December 12, 2002 and January 2, 2003.  Her

supervisors however authorized her to take leave for one week between December 12 and

December 20, 2002.  Plaintiff was supposed to return to work December 23, 2002.  Plaintiff

---

[1] The issues of reinstatement and front pay have been resolved by agreement of the parties.  *See* Document
No. 101 (Consent Order of February 8, 2007).

alleges, upon arriving in Jamaica, her grandmother was in a worse medical condition than Plaintiff had originally thought.  On December 19, 2002, Plaintiff sent an e-mail to her supervisor requesting additional time to make arrangements for her grandmother.  Plaintiff claims she never received a response from her supervisor.  Plaintiff alleges, when she returned to work on December 31, 2002, her employer charged her with Absence Without Leave for more than three days from December 23 to December 31, 2002, and that she was officially terminated.  Plaintiff claims Defendant had advance notice of her need for leave to attend to her grandmother in Jamaica and that Defendant's denial of the FMLA leave request was pretextual and thus not in good faith.

On August 18, 2005, Judge Chasanow denied Plaintiff's Motion for Summary Judgment and denied in part and granted in part Defendant's Motion for Summary Judgment.  Judgment was entered in favor of Defendant and against Plaintiff as to Plaintiff's request for liquidated damages only.  *See* Document No. 25.

This case was tried before a jury between March 21-23, 2006.  On March 23, 2006, the jury returned a verdict in favor of Plaintiff.  The jury found that Plaintiff proved by a preponderance of the evidence that Defendant unlawfully interfered with the exercise of a protected right under the FMLA by denying Plaintiff's requested leave.  The jury further found that Defendant did not prove by the preponderance of the evidence that Plaintiff would have been terminated from her job not later than January 17, 2003 because she was insubordinate.  The jury awarded $76,914.00 to Plaintiff as lost wages as a result of Defendant's violation of the FMLA.  Finally, the jury found that Defendant did not prove by a preponderance of the evidence that Plaintiff failed to mitigate her damages.  The jury did not subtract any amount from the

2

award of $76,914.00.  *See* Document No. 54 .  On March 31, 2006, the Court issued an Order of

Judgment, entering judgment in favor of Plaintiff and against Defendant in the amount of

$76,914.00.  The Court reserved the right to rule on any appropriate motions for prejudgment

interest and an award of attorney's fees and costs.  *See* Document No. 57.  In the Order of

November 9, 2006, this Court granted Defendant's motion to alter or amend judgment by

amending the amount of lost wages awarded to Plaintiff to $61,625.78.  *See* Document No. 87.

### DISCUSSION

**A.    *Pre-Judgment Interest***

Under the FMLA a prevailing Plaintiff is entitled to the interest on the amount of lost

wages calculated at the prevailing rate.  29 U.S.C. § 2617(a)(1)(A)(ii); 29 C.F.R. § 825.400(c).[2]

Defendant concedes that an award of pre-judgment interest is a legitimate request for relief since

the Court specifically reserved the issue in the March 31, 2006 Order of Judgment (Document

No. 57).  Def.'s Opp'n, at 7-8.  An award of pre-judgment interest is at the discretion of the

Court.  *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 489 (4th Cir. 1982); *Spangler v. Colonial

Ophthalmology*, 235 F. Supp. 2d 507, 511 (E.D. Va. 2002).  The factors this Court shall consider

are "the need to fully compensate the wronged party for actual damages suffered, (ii)

considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the

statute involved, and/or (iv) such other general principles as are deemed relevant by the court[.]"

*Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998) (quoting *Securities & Exchange

Comm'm v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (internal quotation

---

[2] The FMLA mandates that an employer who violates this Act *shall be liable* for interest on the sum of lost wages.  Contrarily, the Code of Federal Regulations indicates such an award is discretionary.  "In addition, the employee *may be entitled* to interest on [lost wages], calculated at the prevailing rate."  29 C.F.R. § 825.400(c) (emphasis added).

marks omitted), *cert. denied*, 522 U.S. 812 (1997)).  The Court finds an award of pre-judgment interest is appropriate in this case to fully compensate Plaintiff for damages suffered and in accordance with the remedial purpose of the FMLA.

Plaintiff requests a rate of 6% for pre-judgment interest.  Pl.'s Mot. Amend, at 4.[3]  Citing *Gruber v. Unum Life Insurance Company of America*, 195 F. Supp. 2d 711 (D. Md. 2002) as authority, Plaintiff contends the rate of 6% is the legal rate of pre-judgment interest in Maryland.  *Id.*  Using this figure compounded annually for a three year period and dividing the back pay amount in thirds or $25,638.00[4], Plaintiff calculates that she is entitled to $9,604.41 as pre-judgment interest.

In its Opposition Defendant asserts the appropriate rate is not 6% but "the one year Treasury bond rate applicable during the relevant time periods."  Def.'s Opp'n, at 8 n.8.  Defendant finds fault with Plaintiff's computation.  First, compounding the interest on an annual basis overstates the amount of interest due because pre-judgment interest cannot be incurred until after wages have been actually paid.  Second, Plaintiff fails to provide a coherent calculation methodology thwarting any accurate calculation of pre-judgment interest.  Under these circumstances, Defendant argues no pre-judgment interest should be awarded.

In her Reply Plaintiff notes Defendant fails to cite any authority to support a rate based on the one year Treasury Bond.  Regarding Plaintiff's calculations, she admits there may be some overstatement.  "[H]owever, this is more than made up for by the fact that the interest

---

[3] Plaintiff's motion does not contain page numbers.

[4] This amount is derived from diving in thirds the amount ($76,914.00) the jury awarded for lost wages.  This Court subsequently reduced the award of lost wages to $61,625.78.  Dividing the amended award into thirds equals $20,541.93.

would be compounded only annually as opposed to weekly or even daily, as plaintiff could have asked for." Pl.'s Reply, at 8-9. Plaintiff further claims her calculation is the most efficient and fairest method considering the small amounts of interest relative to the award of lost wages. Finally, Plaintiff asserts "defendant's failure to provide any alternative calculation of its own suggests that it had no better or more efficient way of calculating pre-judgment interest than the method offered by plaintiff." *Id.* at 9.

The *Gruber* case concerns an alleged violation of the Employee Retirement Income Security Act ("ERISA") and state law. In awarding pre-judgment interest at a rate of 6%, Judge Nickerson cited *Quesinberry v. Life Insurance Company of North America*, 987 F.2d 1017 (4th Cir. 1993). The Fourth Circuit noted that ERISA does not specifically provide for pre-judgment interest. Absent a statutory mandate, such an award is within the discretion of the trial court. *Id.* at 1030. "The rate of pre-judgment interest for cases involving federal questions is a matter left to the discretion of the district court." *Id.* at 1031. In the *Quesinberry* case the district court found the judgment rate codified in the Virginia Code appropriate and applied a rate of 12%. In *Gruber* Judge Nickerson applied Maryland's legal rate of pre-judgment interest of 6%. *Gruber*, 195 F. Supp. 2d at 719.

The discretion to award pre-judgment interest in ERISA cases is demonstrated by two other decisions from this District. In *Meyer v. Berkshire Life Insurance Company*, 250 F. Supp. 2d 544, 574 (D. Md. 2003), Judge Blake awarded pre-judgment interest at a rate of 8% per annum. In *Grooman v. Northwestern Mutual Life Insurance Company*, 200 F. Supp. 2d 523, 532 (D. Md. 2002), Judge Nickerson, contrary to *Gruber*, awarded pre-judgment interest at the rate specified in 28 U.S.C. § 1961. Section 1961 states, in pertinent part:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment. . . .
>
> (b) Interest shall be computed daily to the date of payment . . . and shall be compounded annually.

In diversity actions Judges of this District have applied Maryland's legal rate of 6% per annum. *See Sherwood Brands, Inc. v. Levie*, No. Civ. RDB 03-1544, 2006 WL 827371, at *17 n.16 (D. Md. Mar. 24, 2006) ("In diversity cases, a federal court will apply the appropriate state law to determine pre-judgment interest."); *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 848 (D. Md. 2005) ("The Court will award pre-judgment interest at the 'legal' rate of 6% per annum customary under Maryland law."); *Lawyers Title Ins. Corp. v. Haire*, No. Civ. A. CCB-02-4111, 2003 WL 24275209 at *3 (D. Md. June 18, 2003) (permitting Plaintiff to recover pre-judgment interest at the rate of 6% per annum); *Environmental Elements Corp. v. Mayer Pollock Steel Corp.*, 497 F. Supp. 58, 64 (D. Md. 1980) ("In diversity cases, questions involving the award of interest are generally to be determined under state law."). Subject matter jurisdiction in this case is based on a federal question, not diversity of citizenship.

This case does not concern an internal revenue tax case. "[Section 1961 of Title 28] shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986." 28 U.S.C. § 1961(c). *See Snyder v. United States*, 630 F. Supp. 182 (D. Md. 1986) (applying the rate of 12% for pre-judgment interest in accordance with 26 U.S.C. § 6621 in a tax overpayment case). The

Family and Medical Leave Act does not specify the rate at which pre-judgment interest should be awarded.  The Act permits the recovery of interest calculated at the *prevailing rate*.  29 U.S.C. § 2617(a)(1)(A)(ii); *compare Oscar Mayer Foods Corp. v. Pruitt*, 867 F. Supp. 322, 328 (D. Md. 1994) (concerning a claim under the Carmack Amendment to the Interstate Commerce Act where the court applied a specific rate of interest under the rail tariff provision even though no general interest rate is established in the statute.  "As a general proposition, courts have applied the more specific rate of interest rather than the general rate guided by 28 U.S.C. § 1961.").  *See Gatti v. Community Action Agency of Greene County*, 263 F. Supp. 2d 496, 524 (N.D.N.Y. 2003), *aff'd*, 86 F. App'x 478 (2d Cir. 2004).

Because this case is not based on diversity jurisdiction, does not involve an ERISA claim, does not concern an underpayment or an overpayment in an internal revenue tax case nor does the FMLA dictate payment of interest at a specific rate, this Court will apply the general rate as prescribed by 28 U.S.C. § 1961 as the *prevailing rate*.

   1.    *Request to Alter Amount of Lost Wages*

Having resolved the question of what rate to use to calculate pre-judgment interest, the Court now must resolve another issue before determining the amount of pre-judgment interest.  At the January 30, 2007 motions hearing, Defendant requested until the end of the week or by February 2, 2007 to submit 2006 wage information that might be pertinent to the pre-judgment interest issue.  The Court granted Defendant's request.  On February 2, 2007, Defendant requested an additional extension to February 7, 2007.  The Court granted the request for additional time.  *See* Document No. 98 (Order of February 2, 2007).

On February 7, 2007, Defendant filed a Memorandum Regarding Impact of 2006 Wage

Information Pertinent to the Prejudgment Interest Issue and Other Judgment Calculations

("Defendant's Wage Memorandum") (Document No. 100).  In this Memorandum Defendant

claims Plaintiff failed previously to disclose income earned in 2005 and early 2006.  Defendant

argues this newly discovered evidence warrants a reduction in the amount of Plaintiff's lost

wages.  Based on documents Plaintiff provided to Defendant on the issue of front pay, Defendant

learned that Plaintiff earned $10,930.77 from the American Institute of Certified Public

Accountants ("AICPA") between January 1, 2006 and March 22[5], 2006.  Additionally, from a

second employer, ATC Healthcare Services, Inc. ("ATC"), Plaintiff earned $1,507.00 between

January 1, 2006 and March 2[3], 2006, as well as $4,693.63 in 2005.  None of these figures were

included in the previous calculations.  *See* Document No. 100, at 1-3.

Defendant asks this Court to further amend the amount of lost wages awarded to Plaintiff

from $61,625.78 to $44,494.38 to reflect Plaintiff's previously undisclosed earnings.  Applying

the one-year Treasury bond rates of 1.26% for 2003, 2.75% for 2004 and 4.38% for 2005, and

the rate of 4.78% on March 2[3], 2006, Defendant asserts Plaintiff is entitled to $3,862.34 as pre-

judgment interest or a total judgment of $48,356.71.  *See* Document No. 100, at 3-4.

In her Response Plaintiff characterizes Defendant's Memorandum as an untimely motion

for reconsideration.  Plaintiff denies any insinuation that she failed to update her discovery

requests concerning her earnings from AICPA.  Plaintiff places the blame on Defendant.

> [D]efendant simply forgot to request an offset for the amounts earned
> by plaintiff for the first few months of 2006 at AICPA in its
> calculation of damages that defendant filed with the court.  Defendant
> tries now to rectify this error by claiming that this income from
> AICPA is based on newly discovered evidence.  However,

---

[5]The Court is presuming Defendant misidentified this date.  It should be March **23**, 2006.

> defendant's claims that the judgment should be altered under Rule
> 60(b) of the Federal Rules of Civil Procedure because of mistakes
> and/or newly discovered evidence are without merit.

Document No. 103, at 2.

Plaintiff concedes she did not update her discovery responses concerning income earned from ATC.  She claims this omission is harmless.  "Unlike in 2004, by 2005 or early 2006, the ATC job was clearly plaintiff's second job because she was working full time with full benefits at AI[CP]A.  Under well-established Fourth Circuit case law, her back pay earnings clearly should not be diminished by the amounts she earned in that position because it was a second job."  *Id.* at 3 (citation omitted).  Plaintiff asks the Court to deny Defendant's motion to reduce the back pay amount awarded.

The Court has reviewed its Memorandum Opinion of October 27, 2006.  *See* Document No. 78.  Based on the parties' briefs, and particularly Defendant's Combined Memorandum at 34-36, the Court determined Plaintiff earned $107,812.83 between 2003 and 2005.  *Id.* at 39-40.  This figure was derived based on Plaintiff's pay stubs and/or W-2s.  In its Combined Memorandum Defendant failed to address the amount Plaintiff earned between January 1, 2006 and March 23, 2006 and the Court omitted this period from its calculations.  Notably, Plaintiff did not bring this omission to the attention of Defendant or the Court.

In the Order of October 27, 2006, the Court held in abeyance Defendant's Motion to Alter or Amend Judgment and directed the parties to submit figures and computations regarding the maximum total lost wages Plaintiff was entitled to receive based on 3.5% annual merit increase from January 17, 2003 to March 23, 2006.  In accordance with the Order, Defendant filed a Line listing what Plaintiff would have earned if she remained employed with Defendant

9

from January 17, 2003 to March 23, 2006 and deductions for compensation earned which listed

income during 2003-2005.  *See* Document No. 81.  On November 8, 2006, Plaintiff filed a

Response stipulating to Defendant's figures for gross earnings and net earnings.  *See* Document

No. 85.  In the Order of November 9, 2006, the Court amended the judgment entered against

Defendant by reducing the award of lost wages to $61,625.78.  *See* Document No. 87.

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) *mistake, inadvertence, surprise, or excusable neglect*; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.  *The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.*

Fed. R. Civ. P. 60(b) (emphasis added).

Defendant's Wage Memorandum is not formally stylized as a motion for reconsideration

as Plaintiff claims.  The Court finds Defendant's Wage Memorandum is, in effect, a motion for

relief from judgment under Federal Rule of Civil Procedure 60(b).  The Court has reviewed

Plaintiff's Trial Exhibit 14 consisting of three pages of W-2s (years 2002-2004) and a one page

pay stub from AICPA dated December 15, 2005.  Although the case was tried before a jury

between March 21-23, 2006, Plaintiff failed to present *any* records documenting income earned

from January 1, 2006 through at least mid-March 2006.

In her Response to Defendant's Wage Memorandum Plaintiff rejects Defendant's

10

assertion that she failed to disclose any of the interim earnings at AICPA between January 1, 2006 and March 23, 2006.  As noted *supra*, Plaintiff's Trial Exhibit 14 excludes such documentation.  Plaintiff seeks to deflect any responsibility for this omission.  "[D]efendant was . . . well aware that plaintiff was working full-time at AICPA.  Again, plaintiff had provided the [December 15, 2005] paycheck close to trial and never claimed that she had been terminated from AICPA prior to trial."  Document No. 103, at 2.  Inexplicably, Plaintiff fails to explain why she did not provide a January 2006 or February 2006 paycheck close to trial.

The Court finds that, due to Plaintiff's mistake or inadvertence, neither the Court nor Defendant was provided the amount of income Plaintiff earned from AICPA between January 1, 2006 and March 23, 2006.  Plaintiff does not contest that she earned $10,930.77 during this time period, and the Court thus finds that is the amount she earned.  The Court finds Defendant's motion seeking relief from judgment is timely since it was filed less than one year after the Order of March 31, 2006 entering judgment against Defendant and less than one year after the Order of November 9, 2006 amending the judgment by reducing the award of lost wages.  A relief from the $61,625.78 judgment is just because Plaintiff is not entitled to a windfall of *$10,930.77* due to her counsel's mistake or inadvertence.  Such a windfall is also contrary to the FMLA.  For these reasons, the Court will grant Defendant's request for relief from judgment and reduce the award of lost wages from $61,625.78 to *$50,695.01*.

Defendant seeks a further reduction in the award of lost wages for undisclosed income earned by Plaintiff while working for ATC.  Plaintiff concedes this information was not disclosed.  Plaintiff does not dispute that she earned $4,693.63 during 2005 and $1,507.00 between January 1, 2006 and March 23, 2006 from ATC.  Plaintiff argues she had no obligation

to disclose this information since the income from ATC was from a part-time position.  "[E]ven without . . . updated information, the defendant was well aware, from prior disclosures, that plaintiff had worked at ATC in 2004.  Thus it could easily have surmised that she remained in the second job in 2005-[0]6."  Document No. 103, at 4.  The Court disagrees with Plaintiff's assertion since this specific issue was not addressed during the trial:

> Q:    And the very next page, do you have W-2's for places you worked in 2004?
>
> A:   Yes, sir.
>
> Q:   And I notice there are at least two health care places.  Heartland Employment Services and ATC Health Care?
>
> A:   Yes, sir.
>
> Q:   Were you working both places at the same time?
>
> A:   Yes, sir.
>
> Q:    And it shows you made 1553 for ATC Health Care, and for Heartland, you had 8602 and 65 cents?
>
> A:   Yes, sir.
>
> Q:    And then American Institute of Certified Public, what kind of place is that?
>
> A:   American Institute of Certified Public Accountants is an institute for mainly CPAs, certified public accountants.
>
> Q:   Okay.  And did you actually end up getting a job with them?
>
> A:   Yes, I did.
>
> Q:   And do you continue working with them today?
>
> A:   Yes, sir, I do.

Tr. at 111:24 - 112:18 (March 21, 2006).

This testimony reveals that Plaintiff is working full time for AICPA.  It is not unreasonable for a jury to assume, based on the above testimony, that Plaintiff stopped working for ATC upon being hired full-time by AICPA.

The Court has reviewed Plaintiff's earnings in 2004 and 2005.  Comparing the income Plaintiff earned in 2005 from AICPA ($46,132.91) versus income earned from ATC ($4,693.63), a significant difference, the Court is left with only one conclusion:  AICPA was Plaintiff's full time job and ATC was only a part-time position.

Plaintiff relies on *Lily v. City of Beckley, West Virginia*, 797 F.2d 191 (4th Cir. 1986), to support her contention that earnings from her part-time position with ATC should be excluded. In that case the Fourth Circuit observed, "[c]ourts addressing the moonlighting issue have indicated that if the plaintiff could have held both the supplemental job and the job he did not receive because of discrimination, the earnings from the supplemental job will not be used to reduce the back pay award."  *Id.* at 196 (citations omitted).  In affirming the district court's decision, the Fourth Circuit noted:

> The district court specifically held that the City was "not entitled to an offset from secondary employment inasmuch as [Lilly] proved to the court's satisfaction that [the moonlighting] earnings could have been achieved had he been hired as a police officer."  This factual finding is supported by the record, and the district court therefore properly concluded that Lilly's damages should not be reduced by the amount of money that Lilly earned from secondary employment.

*Id.* (alterations in original)

Contrary to *Lilly*, no evidence was presented at trial that Plaintiff earned income from a secondary employment (ATC) in addition to income from her primary position with AICPA for 2005 and through March 23, 2006.  This Court is thus precluded from making a factual finding

13

whether the secondary employment would have interfered with Plaintiff's ability to work as an employee for Defendant. *See Lampley v. Big Discount Food Store, Inc.*, 687 F. Supp. 211, 217 n.2 (M.D.N.C. 1988) (finding that based on Plaintiff's testimony that she and her husband sold vacuum cleaners door-to-door at night, Defendant is not entitled to a credit for earnings from the secondary employment because Plaintiff demonstrated she could have performed the secondary employment even if she had remained employed with Defendant).

The burden is on Plaintiff to demonstrate that the earnings from her part-time job should not reduce her back pay award. She failed to meet this burden by withholding this information from Defendant and the Court. If Plaintiff believes *Lilly* would preclude the reduction of any back pay award by part-time income earned, the Court is perplexed by Plaintiff's failure to present evidence about the part-time position, the hours she works, when she works and the income she earns. Under the circumstances, Plaintiff leaves this Court with no choice but to reduce her back pay award further by the amounts of income earned in 2005 and through March 23, 2006 from ATC. Plaintiff earned $4,693.63 during 2005 and $1,507.00 between January 1, 2006 and March 23, 2006. The Court will grant Defendant's request for relief from judgment and further reduce the award of lost wages from *$50,695.01* to ***$44,494.38***.

> 2.      *Calculation of Pre-Judgment Interest*

In accordance with 28 U.S.C. § 1961, the Court will use "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." The Order of Judgment was entered on March 31, 2006. *See* Document No. 57. That Order was amended, by a reduction in the award of lost wages and thus the judgment amended, by the Order of

November 9, 2006.  *See* Document No. 87.  As noted *supra* this Court has further amended the award of total wages and thus the judgment against Defendant.  Because the amount of damages has changed with the entry of the amended judgment and soon with the entry of a final amended judgment, the latter entry of judgment will be used in establishing the interest rate.  *Contra Krieser v. Hobbs*, 166 F.3d 736, 747 (5th Cir. 1999) (holding that since the amended judgment did not change the amount of damages, but only deleted the reference to the settling/dismissed defendant, the first entry of judgment is the appropriate date from which interest runs).

The final amended judgment will be entered on March 9, 2007.  For the week preceding this date of judgment, the average 1-year constant maturity Treasury yield equaled 4.96%.

There are three steps to calculating the amount of pre-judgment interest.  First, the award should be divided pro rata over the period of time.  Second, after dividing the award, the average annual United States treasury bill rate of interest in accordance with 28 U.S.C. § 1961(b) will be applied.  Third, the interest will be compounded annually.  *Gatti*, 263 F. Supp. 2d at 524.

Based on the above, Plaintiff's back award of $44,494.38 should be divided over 38 months (January 2003 to March 2006).  This results in $1,170.90 per month or $14,050.80 per year.  *See id.* at 525.  As noted *supra* the rate of interest for the average 1-year constant maturity Treasury yield during the preceding week, according to the most recent publication by the Board of Governors of the Federal Reserve System, is 4.96 percent.  *See* Federal Reserve Statistical Release, Selected Interest Rates (Release Date: March 5, 2007), *available at http://www.federalreserve.gov/releases/h15/Current* (March 5, 2007).  Applying this rate and compounding the interest annually results in an award of ***$6,742.77***.  *See* table below.

| Year | Back Pay | Interest Rate | Interest[6] | Interest |
|------|----------|---------------|-------------|----------|
| 01/03 - 01/04 | $14,050.80 | 4.96% | $696.92 | $14,747.72 |
| 01/04 - 01/05[7] | $28,798.52 | 4.96% | $1,428.41 | $30,226.93 |
| 01/05 - 01/06 | $44,277.73 | 4.96% | $2,196.18 | $46,473.91 |
| 01/06 - 03/06[8] | $48,815.71 | 4.96% | $2,421.26 | $51,236.97 |

Plaintiff's total judgment (lost wages + pre-judgment interest) equals ***$51,237.15***.

## B.    *Attorney's Fees*

"The court . . . shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."  29 U.S.C. § 2617(a)(3).  Plaintiff seeks an award of $109,591.50 in attorney's fees.

Plaintiff contends, since she prevailed on her only claim and was awarded all of her back pay, that she is entitled to an award of her entire reasonable attorney's fees.  Plaintiff acknowledges that federal courts use a formula, known as lodestar, to calculate the amount of an award of attorney's fees.  Under lodestar the number of hours the plaintiff's attorney spent on the case is multiplied by a reasonable hourly rate.  Plaintiff argues the Court should use the *Laffey Matrix*, U.S. Department of Justice guidelines in the Washington, D.C. metro area, for determining a reasonable hourly rate.  Pl.'s Mot. Amend, at 5-6.  Based on the *Laffey Matrix*,

---

[6] Total prejudgment interest is derived by adding the interest amounts in this column.

[7] "The amount of the previous year's back pay plus accrued interest is carried over and added to the back pay for the next year."  *Gatti v. Community Action Agency of Greene County*, 263 F. Supp. 2d 496, 525 n.14 (N.D.N.Y. 2003), *aff'd*, 86 F. App'x 478 (2d Cir. 2004).

[8] This calculation is prorated: $1,170.90 per month.  The two month period or $2,341.80 is added to $46,473.91 which equals $48,815.71.

Michael Deeds, an associate at Kestell & Associates who has over 12 years' experience, should be compensated at an hourly rate of $360.00. Mr. Deeds claims he spent a total of 101.2 hours litigating the case and seeks $36,432.00 for his time. James Kestell, with 30 years' experience, should be compensated at a rate of $405.00 per hour. Mr. Kestell spent a total of 144 hours litigating the case and seeks $58,320.00 for his time. Bianca Karim, a two year member of the bar, spent a total of 76.1 hours litigating the case and should be compensated at $195.00 per hour. She seeks an award of $14,839.50. "Plaintiff submits that she is entitled to 100% of her attorney's fees since she was fully successful on her claim." *Id.* at 6.

In its Opposition Defendant challenges Plaintiff's assertion that she prevailed on her *only* claim. According to Defendant, Plaintiff conveniently ignores her *other* unsuccessful claim. Specifically, in addition to back pay, Plaintiff sought liquidated damages. The Court found Defendant met its burden of demonstrating that it had acted in good faith and had reasonable grounds for believing the FMLA did not apply to Plaintiff's circumstances. Def.'s Opp'n, at 9. The Court entered judgment in favor of Defendant and against Plaintiff as to Plaintiff's request for liquidated damages only. *See* Order of August 18, 2005 (Document No. 25). Second, Defendant contends Plaintiff failed to comply with Local Rule 109, *Motions Requesting Attorneys' Fees*, in that: "(1) she did not list the claims upon which she did not prevail; (2) address the attorney's customary fee for like work prevailing in the appropriate attorney community, (3) she did not address other factors required by case law to justify the reasonableness of the rate, and (4) she did not prepare the fee petition in accordance with Appendix B of the Local Rules." *Id.* at 10-11 (footnote omitted).

Defendant asserts Plaintiff failed to submit to opposing counsel quarterly statements

17

showing the amount of time and value of time spent on the case.  Plaintiff submitted two

statements on December 29, 2004 and February 7, 2006.  Although the time spent on the case is

identified, neither report lists the value of the attorneys' time.  Next, Defendant notes Plaintiff

completely ignored the Local Rules' guidelines for hourly rates.  These hourly rates explicitly

apply to FMLA cases.  Defendant argues Plaintiff has provided no justification from

disregarding Appendix B of the Local Rules and applying the higher rates of the *Laffey Matrix*.

"Plaintiff's counsel knowingly accepted a client that would entail litigation conducted in another

jurisdiction and therefore knowingly accepted the risk that the prevailing community rate of this

jurisdiction would apply."  *Id.* at 12.  Applying Appendix B of the Local Rules, Defendant

proposes that Mr. Deeds, an attorney with 12 years' experience, should be compensated at the

lower end of the range of $200.00-275.00 for an attorney admitted for more than eight years, that

Mr. Kestell, an attorney with 30 years' experience, should be compensated at the upper end of

the range and that Ms. Karim's compensation should be awarded at two different rates: $90.00

for work occurring before June 2005, and $135.00 for work after June 2005 for an attorney

admitted to the bar less than five years.  Ms. Karim was not admitted to the Maryland Bar until

June 2005.  Defendant challenges individual time entries sought by Plaintiff's attorneys.  Those

matters will be addressed after the Court resolves the issue regarding the appropriate rate of

compensation.

In her Reply Plaintiff disagrees with Defendant's assertion that she had an unsuccessful

claim.  "[D]efendant mistakes remedies for claims here.  Plaintiff only advanced one <u>claim</u>

'throughout the course of the litigation.'  Namely, plaintiff alleged that she was terminated in

violation of the FMLA, for which she obtained full relief."  Pl.'s Reply, at 9-10.  Second, citing

*Stone v. Thompson*, 164 F. Supp. 2d 639 (D. Md. 2001), Plaintiff argues this Court has

previously departed from the fee schedule in Appendix B.  Plaintiff suggests this Court should

make an upward adjustment to the hourly rate because the guidelines have not changed in over

five years.  Third, Plaintiff acknowledges she failed to provide quarterly statements to Defendant

regarding the amount of time and value spent on the case.  Plaintiff claims the two reports

provided contain the vast majority of hours tallied.  "Indeed quarterly statements . . . were

provided in quarters where approximately 90% of the time was tallied.  Thus, defendant was kept

apprised of the hours spent by plaintiff's attorney's [sic] throughout the litigation and never

objected previously." *Id.* at 11.  Plaintiff asserts Defendant was not prejudiced.  Finally, Plaintiff

contends, although Ms. Karim did not become a member of the bar until June 2005, she

nevertheless should be compensated at the attorney rate for *all* time spent on this litigation.

"[T]he relevant rate is the rate of the attorney at the time the fee petition is filed in order to make

up for the fact that the attorney is not being paid until well beyond the time the hours are

expended and no interest is being awarded on the fees." *Id.* at 14 n.9 (citing *Chisolm v. United

States Postal Serv.*, 570 F. Supp. 1044 (W.D.N.C. 1983)).

     In its Supplemental Memorandum Defendant notes *Stone v. Thompson*, where this Court

departed from the rate schedule of Appendix B, is factually distinguishable from this case.

Moreover, *Stone* undercuts two of Plaintiff's positions supporting a different rate.  First, *Stone*

recognized, where an attorney knowingly accepts a client from another jurisdiction, that the

prevailing rates of that jurisdiction should apply.  Second, the court in *Stone* compensated an

individual at two different rates: work performed before admission to the bar and work

performed subsequent to admission to the bar.  Def.'s Supp. Mem., at 6.  The Court should reject

Plaintiff's assertion that *all* of Ms. Karim's hours should be compensated at the attorney rate.

      1.      *Whether Plaintiff Prevailed Partially or Fully*

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.  But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

In her Complaint Plaintiff lists two counts: "Violation [of] Family and Medical Leave Act" and "Defendant's Violation Not In Good Faith and Willful."  Compl. ¶¶ 15-20.  In reviewing the Complaint it is undisputed that the *sole* basis of this litigation is Defendant's alleged violation of the FMLA.  If an employer violates the FMLA, the employer shall be liable to the  affected employee for damages equal to any wages, salary, employment benefits or other compensation lost, interest on the lost wages, salary, employment benefits or other compensation, and an additional amount as liquidated damages if the FMLA violation was not in good faith.  29 U.S.C. § 2617(a)(1).  Under the FMLA an employee is entitled to different remedies including lost wages and liquidated damages.  Plaintiff's averment that Defendant's violation was not in good faith and willful is a *prima facie* assertion for entitlement to liquidated damages.  In the Remedy Requested section of her Complaint Plaintiff asked that the Court "[g]rant plaintiff additional liquidated damages for defendant's not in good faith violations of the Family Medical Leave Act."  Compl., Remedy ¶ 2.  This is in addition to a request that the Court

"[d]irect defendant to reinstate plaintiff and make her whole for all losses in wages and benefits that she suffered because of defendant's illegal conduct[.]"  *Id.* ¶ 1.

The Court finds Plaintiff asserted only one claim, a violation of the FMLA, but sought multiple remedies including reinstatement, lost wages and liquidated damages.  *Compare Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 651 (D. Md. 1998) (finding plaintiff achieved very limited success prevailing on only two of his eight original claims).  Although Plaintiff's requested remedy of liquidated damages was dismissed at the summary judgment stage, Plaintiff was nonetheless successful on the single claim that Defendant violated the FMLA.

> Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.  Plaintiff prevailed fully on her claim and obtained excellent results.

2.   *What Rate Schedule Should Apply for Attorney's Fees*

This Court has issued *Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases*, otherwise known as Appendix B, as part of this Court's Local Rules.  Footnote 1 of Appendix B identifies which cases are subject to this guidance.

> These rules and guidelines apply to cases in which a prevailing party would be entitled to reasonable attorneys' fees under 42 U.S.C. § 1988(b) and to cases brought under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Equal Pay Act, the Americans With Disabilities Act, ERISA, the Rehabilitation Act, the Individuals With Disabilities Education Act, the *Family and Medical Leave Act*, The Fair Credit Report Act and equivalent statutes.  They do not apply to Social Security cases.

21

Emphasis added.

Plaintiff, in relying on *Stone*, urges this Court to apply the *Laffey Matrix* which awards a rate of compensation higher than the rate schedule of Appendix B.  This Court has reviewed *Stone* and find it factually distinguishable.  Unlike the attorney in *Stone*, Plaintiff's counsel did not represent Plaintiff over many years at several adversarial proceedings and thus it would have been unreasonable for Plaintiff to retain an attorney from Maryland to represent her.  The Court finds *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751 (D. Md. 2001) persuasive.  "[W]here an attorney knowingly accepts a client that will entail primarily litigation in another jurisdiction, the prevailing community rate of that jurisdiction should be applied."  *Id.* at 767 (citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 353, 350 (6th Cir. 2000)).  Kestell & Associates knew when it undertook the representation of Plaintiff that this case would be litigated in the District of Maryland, not in Washington, D.C.  The firm was fully aware it was bringing a federal cause of action against a Maryland state agency.  Moreover, as acknowledged in the Complaint, "[v]enue in this district is appropriate because the violations alleged occurred in Prince George's County, Maryland, where the plaintiff works for the defendant."  Compl. ¶ 3.  Even though the Greenbelt Courthouse is located very close to Washington, D.C., the Greenbelt Courthouse is in the District of Maryland.  At the motions hearing counsel characterized this case as more of a Washington, D.C. metro area case than a Baltimore case.  Naturally, counsel contends, an individual, such as Ms. Dillon, is more likely to seek representation from a Washington D.C. area attorney.  Further, counsel notes an enormous gulf exists between the *Laffey Matrix* in the District of Columbia and the rate schedule in Appendix B of this Court's Local Rules.  Counsel commented that the rate schedule in Appendix B has not been adjusted

upward since 2001 and that an upward adjustment is appropriate in this case.

"Courts have looked to the prevailing market rate outside of the local community in *exceptional circumstances where the litigation was complex or the plaintiff was unable to obtain local counsel.*" *Xiao-Yue Gu*, 127 F. Supp. 2d at 767.  This case does not meet the exceptional circumstances criteria.  If the firm found the prevailing rates of this District prohibitively low, the firm could have elected not to represent Ms. Dillon.[9]  Plaintiff's counsel will be compensated at the hourly rate in accordance with Appendix B.

With more than 30 years' experience as an attorney, Mr. Kestell is entitled to the highest hourly rate or $275.00.  Mr. Deeds, a licensed attorney for 12 years, is entitled to an hourly rate of $250.00.  In her declaration Ms. Karim acknowledges her membership with the Maryland Bar began in June 2005.  The majority of Ms. Karim's legal work on this case occurred while Ms. Karim was a law clerk.  At the motions hearing counsel, relying on *Chisolm*, argued the relevant hourly rate is at the time the petition is filed, not at the time the work was performed because there is a significant gap between when the services are rendered and compensation.  Thus, Ms. Karim should be compensated at the attorney rate for all of her hours.

*Chisolm* stands for the proposition of awarding attorney's fees in a lengthy civil rights litigation at the current market rate "to offset the ravages of inflation and the loss of use of funds." *Chisolm*, 570 F. Supp. at 1046-47.  In that case the suit was filed on June 27, 1973 and a judgment was not entered until October 3, 1980.  The *Chisolm* court noted that counsel for plaintiffs labored for more than eight years before receiving any fees or expenses.  *Chisolm* does

---

[9] In paragraph 2 of his Declaration, Mr. Kestell states, "I have represented employees in numerous discrimination cases in federal courts in Connecticut, District of Columbia, *Maryland* and Virginia over the past 26 years."  Pl. Mot. Amend, Kestell Decl. ¶ 2 (emphasis added).  Mr. Kestell thus should be well aware that the rate schedule in the District of Maryland is not analogous to the District of Columbia.

not however suggest or imply that in lengthy civil rights litigation an attorney should be compensated at the current market rate even if, when rendering services many years ago, the petitioner was not an attorney.  Ms. Karim will be compensated at an hourly rate of $90.00 as a law clerk for all services rendered before June 2005, and at an hourly rate of $135.00 as an attorney admitted to the bar for less than five years for all services rendered after June 2005.  Finally, it is worth noting that the rate schedule of Appendix B has remained the same from July 2001 to the present.  There has not been any devaluation of fees.

    *3.*    *Which Services Should Be Compensated*

Having resolved the issue of the appropriate hourly rate, the Court now reviews counsels' petitions and Defendant's objections.  "Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation. . . ."  *Hensley*, 461 U.S. at 435.

    *A.*    *Case Development, Background Investigation & Case Administration*

Plaintiff's attorneys seek compensation for their work on case development, background investigation and case administration as follows:  15.7 hours for Mr. Kestell, 1.1 hours for Mr. Deeds and 35.5 hours for Ms. Karim.  Defendant does not object to the compensable hours sought by Mr. Kestell.

Defendant opposes compensating Mr. Deeds for his 1.1 hours researching the service of complaint on a Maryland state agency on March 4, 2004.  According to Defendant, in the October 30, 2003 letter from William C. Dickerson to Mr. Kestell, the Office of the General Counsel for Defendant offered to accept service of process for the Commission.  Despite this offer and the research conducted by Mr. Deeds, Plaintiff erroneously and defectively served the

24

Attorney General of the State of Maryland.  "While the Defendant did not waste everyone's time by making an issue of the defective service, Mr. Deeds should not receive any attorney[']s fees for this category and 1.1 hours should be deducted from the fee award."  Def.'s Opp'n at 14. Plaintiff did not respond to this argument in her Reply.  The Court agrees with Defendant and will not compensate Mr. Deeds' 1.1 hours for researching service of process.

Defendant raises multiple objections to Ms. Karim's entries.  First, Defendant objects to Ms. Karim billing 3.8 hours, from October 2, 2003 through October 16, 2003, for drafting and revising a settlement letter.  Defendant opposes these entries on three grounds: (a) these hours are not properly included because they pertain to pre-litigation settlement, not litigation, (b) an exorbitant amount of time was spent on this two page letter, and (c) Mr. Kestell already billed for drafting this letter in his October 19, 2003 entry.  In her Reply, Plaintiff argues Defendant cites no authority for its proposition that Plaintiff's counsel cannot be compensated for pre-litigation settlement work.  "Moreover, it is hardly surprising that a first year associate would spend substantially more time on a letter than would a 35 year lawyer.  But that is more than made up for in the fact that the first year associate bills at a substantially lower rate."  Pl.'s Reply, at 12.  Defendant is correct that Ms. Karim billed 3.8 hours for drafting a settlement letter but Defendant misidentified the dates.  Ms. Karim billed 2.6 hours on September 14, 2003 (drafting), 0.5 hour on October 2, 2003 (changes to draft)  and 0.7 hour on October 16, 2003 (changes to draft).  Mr. Kestell billed 2.5 hours for a second meeting with the client, preparing retainer agreement and letter to employer. It is not clear to the Court the portion of the 2.5 hours dedicated to the letter to the employer.  It is not unreasonable to assume Ms. Karim drafted the letter and Mr. Kestell reviewed, edited and signed the letter.

The Court agrees with Defendant that 3.8 hours to draft a two page settlement letter is excessive.   Ms. Karim was a law student when she drafted the settlement letter and thus should not be held to the same standards as an associate.   Based on Ms. Karim's skills, the Court finds 2.0 hours reasonable and will deduct 1.8 hours from the fee award.

Second, Defendant claims Ms. Karim should not be compensated for 4.6 hours on August 12, 2004 researching Fourth Circuit and sister jurisdictions about evidence required to establish that Ms. Dillon was the only individual who could assist her grandmother in getting assisted living and thus qualifying Ms. Dillon for leave under the FMLA.   "Defendant did not advance this claim during litigation and the fees should be deleted."   Def.'s Opp'n, at 14.   In her Reply Plaintiff observes, "defendant has repeatedly and continues to argue that plaintiff was not needed to care for her grandmother since other individuals could have done so.   Therefore, defendant's argument is based on a false factual premise and should be disregarded."   Pl.'s Reply, at 13.

During closing argument counsel for Defendant remarked:

> You have the issue there with – – the reason that's given in the FMLA form and medical certification is that it was in order to find a caregiver.  Well, in order to find the caregiver that's identified, who was already the caregiver, so does that really wash?  I would suggest that that doesn't meet the statutory criteria.
>
>  Also, if you look at her deposition, Ms. Dillon's deposition testimony, you will also see that the reason was – – that ultimately Ms. Dillon's grandmother was not placed in assisted living.  She was looking for a different house, a better house.  I leave it to you to look at the evidence and see if you believe that qualifies under the statute as one of the reasons in order and needed to care for.

Tr. at 165:7 - 20 (March 22, 2006).

It is apparent from closing argument that Defendant is asserting that Ms. Dillon was not the *only* individual who could have assisted her grandmother, that at least one other person was

26

available as a *caregiver*.  Ms. Karim's 4.6 hours of research was prudent in anticipating potential

challenges to Plaintiff's claim that Defendant interfered with Plaintiff's rights under the FMLA.

The Court will compensate Ms. Karim, at the law clerk rate, for her research.

      Third, Defendant objects to Ms. Karim billing 1.1 hours for meeting Ms. Dillon regarding

the summary judgment motion and affidavit on October 17, 2004 and billing 4.7 hours on

November 19, 2004 for research related to the summary judgment notion.  "The Plaintiff was

successful on only one of [her] claims, thus the Plaintiff should only receive 50% of [her] fees

related to the summary judgment motion and its opposition, as well as any fees for services

occurring prior to the summary judgment motion."  Def.'s Opp'n, at 15.  The Court has

previously ruled that Plaintiff was successful on her *sole* claim though only 50% successful

regarding remedies sought.  The Court denies Defendant's request to deduct these hours from the

fee award.

      Fourth, Defendant contends Ms. Karim's 1.8 hours on October 13, 2003 for research

concerning the good faith claim should be deleted given that this claim was not successful.

Further, Ms. Karim's 2.1 hours on August 10, 2004 for research concerning the standard for

retaliation claim under the FMLA should be deleted because Plaintiff did not present a retaliation

claim.  *See* Def.'s Opp'n, at 15.  In her Reply Plaintiff asserts that the good faith claim and the

retaliation claim are interrelated and thus no reduction is appropriate.  *See* Pl.'s Reply, at 14.

The Court will reduce the 1.8 hours for research concerning the good faith claim by 10% or to

1.6 hours because this "remedy" was dismissed at the summary judgment stage.  *See infra.*  The

Court will also deduct 2.1 hours for research concerning the standard for retaliation under the

FMLA.  Plaintiff filed her Complaint on March 25, 2004.  She did not file an Amended

Complaint.  She did not assert a claim for retaliation.

Finally, Defendant objects to Ms. Karim's time entry of 0.4 hour on September 29, 2005 for providing Plaintiff with tax information and information concerning damages.  "Defendant submits that the Plaintiff never provided an update to the Defendant concerning damages." Def.'s Opp'n, at 15.  In her Reply Plaintiff observes, "[p]resumably, defendant is referring to updating her discovery response.  However, plaintiff had to update the information when she prepared her pretrial statement and testified at trial.  Therefore, these numbers had to be constantly updated as the litigation proceeded and the work contributed to those updates."  Pl.'s Reply, at 14.  As noted *supra* the Court has not condoned Plaintiff's failure to update discovery concerning income earned between January 1, 2006 and March 23, 2006.  Ms. Karim's entry however predates this period.  Thus, the Court will not deduct 0.4 hour.

Based on the above analysis, Ms. Karim sought compensation for 35.5 hours.  The Court will order compensation for 29.8 hours, with 25.5 hours at the law student rate (***$2,295.00***) and 4.3 hours as an attorney with less than five years' experience (***$580.50***).  Mr. Kestell will be compensated in the amount of ***$4,317.50*** for his 15.7 hours.

### B.     *Pleadings*

Defendant claims the hours expended drafting, editing and filing the Complaint are excessive and unreasonable.  Specifically, Defendant opposes 1.5 hours on March 4, 2004 by Mr. Kestell for securing local counsel and explaining the case to the local counsel.  "There has been no evidence that the Plaintiff had difficulty selecting local counsel and the Defendant should not be penalized for the attorneys not being admitted in[] the State of Maryland."  Def.'s Opp'n, at 16.  In her Reply Plaintiff argues, "[i]t is hard to see how 1.5 hours to line up a local

counsel in an area involving multiple jurisdictions is unreasonable.  And defendant offers no reason to suggest it is unreasonable."  Pl.'s Reply, at 15.  Mr. Deeds is licensed to practice law in Virginia, Pennsylvania and the District of Columbia.  Mr. Kestell is licensed to practice law in the District of Columbia, Connecticut and Wisconsin.  These attorneys knew, when they accepted Plaintiff as their client, that neither was licensed to practice in Maryland.  Having to secure local counsel is the cost of doing business in a jurisdiction where they are not admitted to practice.  The Court will deduct these hours from the fee award.

Second, Defendant challenges the 0.5 hour on March 4, 2004 by Mr. Kestell for transitioning complaint to Mr. Deeds.  "The Defendant is at a loss to understand what professional activity could possibly take half of an hour in order to get the complaint to Mr. Deeds."  Def.'s Opp'n, at 16.  Plaintiff responds that "'transitioning' does not simply mean sticking a piece of paper in the mail or handing it to someone but also explaining the case and giving instructions as to what needs to be done in terms of final edits.  Thus, the time is more than reasonable."  Pl.'s Reply, at 15.  The Court agrees.  This time will be compensated.

Finally, Defendant objects to Mr. Deeds' 1.7 hours on March 4, 2004 researching a suit against a state agency under the FMLA "when Defendant's counsel had already agreed to accept service and the research resulted in improper service."  Def.'s Opp'n, at 16.  In her Reply Plaintiff contends, "the research clearly related to whether a state was *non sui juris* under the FMLA not whom to serve.  Therefore, defendant's objection misses the point entirely.  Further the research was entirely necessary since this would have been a dispositive issue."  Pl.'s Reply, at 15.  Consistent with the ruling *supra*, the Court will deduct these hours from the fee award.

Based on the above analysis, Mr. Deeds sought compensation for 5.9 hours.  The Court

will order compensation for 4.2 hours only.  At an hourly rate of $250.00, Mr. Deeds shall

receive ***$1,050.00***.  Mr. Kestell sought compensation for 6.2 hours.  The Court will order

compensation for 4.7 hours only.  At an hourly rate of $275.00, Mr. Kestell shall receive

***$1,292.50***.

   C.  *Depositions*

  Defendant opposes the dual entries for ***preparing*** the client for deposition on October 7,

2004 by both Mr. Kestell, who claims 2.5 hours, and Ms. Karim, who claims 2.1 hours.  "The

Defendant respectfully submits that these entries should not be compensated under Appendix B

of the Local Rules because Section 2c states that only one lawyer shall be compensated for client

and third party conferences.  Mr. Kestell should be compensated."  Def.'s Opp'n, at 16-17.

Plaintiff counters this argument.  "But the guidelines note that where a less senior attorney's

presence is needed because she organized the information necessary in the deposition of a

critical witness, both attorneys['] time may be billed."  Pl.'s Reply, at 15-16 (citation omitted).

Footnote 3 to Appendix B(2) of the Local Rules allows "[d]eparture . . . upon a showing of a

valid reason for sending two attorneys to the deposition, e.g. that the less senior attorney's

presence is necessary because he organized numerous documents important to the deposition but

the deposition is of a critical witness whom the more senior attorney should properly depose."

Contrary to Defendant's assertion, Ms. Karim ***did not attend*** the deposition.  Ms. Dillon was

deposed on October 8, 2004, as reflected in Mr. Kestell's declaration where he claims 4.5 hours

for defending Ms. Dillon at a deposition ***and*** deposing Ms. Barney.  The Local Rules do not

prohibit more than one attorney participating in the ***preparation*** of a client for a deposition.

  Based on the above analysis, Ms. Karim claims and shall be compensated for 2.1 hours.

At the law student rate of $90.00 per hour, Ms. Karim shall receive ***$189.00***.  Mr. Kestell claims

and shall be compensated for 7 hours.  At an hourly rate of $275.00, Mr. Kestell shall receive

***$1,925.00***.

        *D.*     *Motions Practice*

           *1.*   *Summary Judgment Motion*

Defendant argues, because Plaintiff was unsuccessful on her liquidated damages claim,

the hours spent on the motion for summary judgment should be reduced by 50%.  Defendant also

characterizes many of the time entries as duplicative and excessive.  The Court has previously

ruled that Plaintiff was successful on her *sole* claim, though not successful on one of the

remedies she sought.  Thus, a reduction by half is not mandated.  However, the Court will reduce

by *10%* any award since Plaintiff unsuccessfully argued an entitlement to liquidated damages in

two of the nineteen pages of her memorandum of law.

In reviewing the time entries for the summary judgment motion, Mr. Kestell claims 4.5

hours on August 18, 2004 for preparing Plaintiff's draft declaration for summary judgment

motion, and 2.5 hours on August 21, 2004 for corrections to Plaintiff's declaration and meeting

with client.  Approximately two months later on October 13, 2004, Ms. Karim claims 2.1 hours

for drafting affidavit of Plaintiff and 1.2 hours for edits to affidavit of Plaintiff.  No affidavit or

declaration was filed with the Court before October 22, 2004, the date Plaintiff filed her motion.

*See* Document No. 13, Ex. (Dillon's Decl.).  This declaration is six pages in length.  It is not

readily apparent how much of the 2.5 hours on August 21, 2004 Mr. Kestell spent correcting

Plaintiff's declaration versus meeting with Plaintiff.  A total of 10.3 hours is not an excessive

amount of time for drafting and editing a six page, fact intensive declaration.  This time will be

compensated.

Second, both Mr. Kestell and Ms. Karim prepared and drafted the summary judgment motion.  Mr. Kestell's earliest entries are on August 19 & 22, 2004.  He subsequently worked on the summary judgment motion between October 7 and 22, 2004, for a total of 15.1 hours.  With a 10% reduction, only 13.6 hours are compensable.

Ms. Karim claims 19.8 hours for drafting the brief for the summary judgment motion between October 18-20, 2004.  The memorandum of law filed in support of Plaintiff's summary judgment motion consists of 19 pages.  As a law student, Ms. Karim does not have the wealth of experience of a 35 year practicing lawyer.  It is not surprising that the time she spent on the summary judgment motion exceeds Mr. Kestell's.  With a 10% reduction, only 17.8 hours are compensable.

Mr. Deeds seeks 1.8 hours for editing, formatting and filing of the summary judgment motion on October 22, 2004.  This is in addition to Mr. Kestell's 3.5 hours on October 22, 2004 for completing the summary judgment motion and attachments.  Mr. Deeds' 1.8 hours are compensable.

Mr. Kestell claims an additional 17.4 hours for other motions practice tasks, *e.g.*, reviewing opposition to summary judgment motion and preparing draft reply.  Mr. Kestell is entitled to compensation for these hours.

Based on the above analysis, for the summary judgment motion (including opposition and reply), the Court will order compensation for 21.1 hours by Ms. Karim.  As a law student, with an hourly rate of $90.00, Ms. Karim shall receive ***$1,899.00***.  The Court will order compensation for 38 hours for Mr. Kestell, who is entitled to receive ***$10,450.00***.  Mr. Deeds is

entitled to receive *$450.00*.

### 2. *Opposition to Motion in Limine*

Defendant objects to Mr. Deeds' and Ms. Karim's hours concerning the motion in limine. Defendant asserts the amount of time claimed is unreasonable and that certain entries are duplicative. In reviewing the docket for this case, Defendant filed a motion in limine on January 3, 2006. *See* Document No. 35. Inexplicably, Ms. Karim claims 2.7 hours on December 9, 2005 for drafting a motion in opposition to the motion in limine. Since this opposition *predates* the filing of Defendant's motion in limine, the Court will not allow this claim for attorney's fees.

The Court will also strike Ms. Karim's 3.6 hours on December 13, 2005 for editing a memorandum in support of Plaintiff's motion. Plaintiff's summary judgment motion was filed on October 22, 2004. *See* Document No. 13. The next substantive filing by Plaintiff is her response in opposition to Defendant's motion in limine on January 20, 2006. *See* Document No. 41. It is not apparent to the Court what edits where made to what memorandum in support of Plaintiff's motion by Ms. Karim on December 13, 2005. Despite Plaintiff's explanation, *see* Pl.'s Reply, at 16-17, ultimately, a motion was never filed and the Court finds it is unreasonable to order Defendant to pay the fee for a motion in limine Plaintiff never filed.

Mr. Deeds claims 16.5 hours from January 18-20, 2006 for researching, drafting, editing and filing Plaintiff's opposition to Defendant's motion in limine. The Court ultimately granted in part and denied in part the motion in limine. Because Plaintiff was successful, only in part, in opposing the motion in limine, the Court will reduce by 50% the hours sought by Mr. Deeds or to 8.3 hours. Mr. Deeds is also entitled to be compensated for 0.4 hour on January 3, 2006 for drafting and filing an extension of time to file a pretrial statement.

Based on the above analysis, Mr. Deeds shall be compensated for 8.7 hours.  At an hourly rate of $250.00, Mr. Deeds shall receive ***$2,175.00***.

>    E.    *Attending Court Hearings*

Defendant objects to Mr. Kestell billing 3.0 hours and Mr. Deeds billing 3.1 hours for a January 9, 2006 pretrial conference with the Court that lasted approximately one hour. "Defendant submits that, at a minimum, 2 hours should be deleted from Mr. Kestell and 2.1 hours deleted from Mr. Deeds." Def.'s Opp'n, at 18.  Plaintiff argues that travel time is compensatory unless counsel is working on other cases.  "Here, not only was work not performed on other cases it was spent preparing for the conference and then strategizing in light of the conference proceedings on the instant case. It is therefore reasonable."  Pl.'s Reply, at 17.

>    Whenever possible time spent in traveling should be devoted to doing substantive work for a client and should be billed (at the usual rate) to the client.  If the travel time is devoted to work for a client other than the matter for which fees are sought, then the travel time should not be included in any fee request.  If the travel time is devoted to substantive work for the client whose representation is the subject of the fee request, then the time should be billed for the substantive work, not travel time.

Local Rules, Appendix B(2)(f)(i) (D. Md. 2004).

Mr. Kestell shall be compensated for 3 hours and shall receive ***$825.00***.  Mr. Deeds shall be compensated for 3 hours and shall receive ***$750.00***.

>    F.    *Trial Preparation and Post-Trial Motions*

Defendant objects to Mr. Kestell's March 3, 2006 entry (0.3 hour) for coordinating arrangements for Dr. Nesbeth.  Defendant claims there is no explanation as to the provision of legal services.  Defendant also objects to Mr. Kestell's March 17, 2006 entry (1 hour) for

preparing Dr. Nesbeth's testimony because Plaintiff failed to update her discovery responses or disclosure.  Plaintiff responds that "the time spent was for taking care of details to produce one of the most important trial witnesses, involving numerous phone calls and emails between counsel, the client and the witness and included initial preparation and interviewing of the witness to ensure that her testimony was relevant."  Pl.'s Reply, at 17.  The Court agrees with Plaintiff.  The amount of time claimed, 1.3 hours, is not excessive or unreasonable.

Second, Defendant claims the amount of time spent by Mr. Deeds and Ms. Karim in preparation of the trial exhibit book and the trial counsel book is excessive and unreasonable and should be reduced.  Mr. Deeds spent 6.1 hours and Ms. Karim spent 3.8 hours, a total of 9.9 hours, preparing the exhibit books.  "Although Defendant can understand the need for counsel to supervise the preparation of the exhibit books, this activity is more properly conducted by administrative or paralegal staff after the attorney determines the contents of the exhibit books."  Def.'s Opp'n, at 18.  For the same reasons, Defendant asserts the 4.8 hours spent by Mr. Deeds preparing the trial counsel book should be reduced.  In her Reply Plaintiff discloses that her counsel's firm has no administrative staff to assemble books.  "[W]hile a rate reduction for some hours of this task may be appropriate, no time reduction is appropriate."  Pl.'s Reply, at 18.  Plaintiff also rejects Defendant's assertion that the assembling of the trial counsel's notebook could have been handled by administrative staff.  "[T]he organizing of this book which is the bible for the trial lawyer and contains every vital document in the case to ensure efficient and effective trial preparation and presentation could simply not be done by administrative staff."  *Id.*

Plaintiff's Trial Exhibit Binder consists of 15 exhibits and 87 pages (excluding tab dividers).  While Ms. Karim does claim 3.8 hours for preparing trial exhibit books on March 18

& 20, 2006, in reviewing Mr. Deeds' declaration, the Court finds he only claims 5.3 hours (not 6.1 hours) for assembling exhibits and assembling trial exhibit books on March 16 & 20, 2006. Considering the number of documents and the total number of pages of the exhibits, the Court finds the 9.1 hours dedicated to this task excessive.  Mr. Deeds claims he spent 3.2 hours assembling the 15 exhibits totaling 87 pages.  That amount seems unreasonable.  The Court reduces the allowable time to 1.5 hours.  It is not readily apparent why, after Ms. Karim spent 3 hours preparing the trial exhibit books on March 18, 2006, Mr. Deeds needed to dedicate another 2.1 hours assembling the trial exhibit books on March 20, 2006.  The Court hereby strikes the 2.1 hours claimed by Mr. Deeds on March 20, 2006.  Because the 3.8 hours dedicated to preparing the trial exhibit books by Ms. Karim is purely an administrative task, she will be compensated at the paralegal/law clerk hourly rate of $90.00, even though Ms. Karim was a member of the bar by March 2006.  The 1.5 hours spent by Mr. Deeds assembling the trial exhibit will be compensated at the hourly rate of $250.00.

Regarding the 4.8 hours spent preparing and finalizing the trial counsel book, this case did not involve voluminous documents.  The Court finds 3 hours dedicated to this task is reasonable at an hourly rate of $250.00.

Third, Defendant argues the 17.10 hours spent by Mr. Deeds researching and preparing for the Rule 50 motion appears generally excessive.  "At a minimum, the hours allocated to Plaintiff's Rule 50 motion that was denied should be deleted."  Def.'s Opp'n, at 18.  Plaintiff claims the time spent was necessary in anticipation of numerous objections raised by Defendant in its Rule 50 motion.  "[T]here should be no deduction for plaintiff's Rule 50 motion since the same research and arguments were used to defend against defendant's Rule 50 motion and

because plaintiff ultimately obtained substantial success on the claim."  Pl.'s Reply, at 18.  The

Court finds 17.10 hours researching this one issue is excessive.  The Court reduces the

compensable time to 12 hours.

Fourth, for the first two days of the trial, Mr. Kestell claims 17.5 hours and Mr. Deeds

claims 19 hours.  Citing Section 2(D) of Appendix B of the Local Rules, Defendant notes that

only one lawyer shall be compensated for attending hearings.  "Defendant respectfully submits

that Plaintiff's case was handled by Mr. Kestell during the two-day trial.  Although Mr. Deeds

argued the Rule 50 motion, he did not examine any witnesses.  Consequently, Mr. Deeds['] time

for the two-day trial should be reduced to his minimal actual hands-on activity, or in the

alternative, billed at the paralegal rate."  Def.'s Opp'n, at 19.  In her Reply Plaintiff reminds

Defendant that it had two lawyers present for the entire trial.  Mr. Deeds did more than just argue

*one* Rule 50 motion.  "Mr. Deeds argued two Rule 50 motions, argued objections to exhibits and

witnesses, argued objections on jury instructions in court, co-selected the jury, prepared

witnesses, advised on witness examinations both on direct and cross, argued all objections at the

several hour charge conference, advised on objections to witness and closing and opening

arguments."  Pl.'s Reply, at 19.  Defendant's suggestion that Mr. Deeds' trial time should be

reduced or billed at a paralegal rate is, Plaintiff argues, without merit.

Footnote 4 to Section 2(D) of Appendix B states in pertinent part:

> *There is no guideline as to whether more than one lawyer for each*
> *party is to be compensated for attending trial.*  This must depend
> upon the complexity of the case and the role that each lawyer is
> playing.  For example, if a junior lawyer is present at trial
> primarily for the purpose of organizing documents but takes a
> minor witness for educational purposes, consideration should be
> given to billing her time at a paralegal's rate.

Emphasis added.

Mr. Deeds was not a junior lawyer present primarily for the purposes of organizing documents.  He performed substantive work, which is not restricted to examining or cross-examining witnesses.  Mr. Deeds should be compensated for his time with no reduction in the hourly rate.

There is a discrepancy in the time claimed by Mr. Deeds and Mr. Kestell for the hours spent in trial:  19.8 by Mr. Deeds and 17.5 by Mr. Kestell.  As co-counsel the Court finds the hours compensated should be identical.  The Court thus finds Mr. Kestell and Mr. Deeds are entitled to compensation for 9 hours each day or 18 hours total for March 21-22, 2006.

Finally, Defendant challenges Mr. Kestell's 6 hours on March 23, 2006 for representing his client at the third day of trial and the jury verdict.  "Mr. Kestell's presence was not required other than to respond to a jury note and take the verdict.  Mr. Kestell, as defense counsel did, had ample opportunity to utilize his time to conduct other legal work."  Def.'s Opp'n, at 19.  Defendant asks the Court to reduce Mr. Kestell's compensable time to responding to the jury note and taking the verdict.  Plaintiff rejects Defendant's argument.  "Mr. Kestell had no choice but to be at court since his office was an hour away from the courthouse, the court insisted that he be within the building during deliberations and he had to be prepared to respond to the jury question or verdict on short notice."  Pl.'s Reply, at 19.  The Court did direct counsel for both parties to either remain at the courthouse or be available by telephone.  Mr. Kestell is entitled to compensation.

Based on the above analysis, after striking certain hours, counsel for Plaintiff will be compensated as follows:  Ms. Karim:  3.8 hours at an hourly rate of $90.00 or *$342.00*; Mr.

Deeds:  52.2 hours at an hourly rate of $250.00 or ***$13,050.00***; Mr. Kestell:  56.5 hours at an hourly rate of $275.00 or ***$15,537.50***.

     *G.  Fee Petition Preparation*

   "The fee petition should have been developed from contemporaneous time records.  It is therefore unreasonable that Mr. Kestell would have spent 5.1 hours; Ms. Karim 5.3 hours and Mr. Deeds 8.5 hours to prepare these documents if they were made from contemporaneous time records."  Def.'s Opp'n, at 19-20.  Defendant proposes each counsel be compensated one hour only.  Plaintiff claims the time spent was perfectly reasonable.  "Counsel must prepare a declaration; they must ensure that they have all time entries to put on their declarations, they must review the entries line by line to make sure whether the time entries are reasonable, they must cut where they are not reasonable, they must review expenditures to make sure they are reasonable, they must draft and edit memoranda supporting their fee petition."  Pl.'s Reply, at 20.  The Court finds as reasonable no more than 4.5 hours dedicated to preparing the fee petition.  The Court thus reduces the time claimed for each petition to 4.5 hours.  Therefore, counsel for Plaintiff will be compensated as follows:  ***$607.50*** for Ms. Karim, ***$1,125.00*** for Mr. Deeds, and ***$1,237.50*** for Mr. Kestell.

   Consistent with the rulings above, the total amount awarded to Ms. Karim is ***$5,913.00***; the total amount awarded to Mr. Deeds is ***$18,600.00***; the total amount awarded to Mr. Kestell is ***$35,585.00***.  The total amount awarded as attorney's fees is ***$60,098.00***.

**C.  Other Costs**

   Defendant objects to the $100 receipt from Capitol Process Services, Inc. for the service

of process attached to Mr. Deeds' Affidavit[10] because the Office of the General Counsel for

Defendant offered to accept service on October 30, 2003 and Plaintiff ultimately served the

wrong party, specifically, the Attorney General for the State of Maryland.  In her Reply Plaintiff

acknowledges Defendant's offer to accept service.  "However, plaintiff was free to serve

defendant as [she] saw fit."  Pl.'s Reply, at 20.  Consistent with this Court earlier rulings,

Plaintiff will not be compensated for serving the wrong entity.

Second, Defendant "questions the $121.13 spent for supplies and copying costs given

that it is not clear how these expenses relate to the provision of services for the Plaintiff."  Def.'s

Opp'n, at 20.  Plaintiff responds, "the only copying and supplies charged were for the exhibit

books."  Pl.'s Reply, at 20.  The Court finds this expense extremely low and very reasonable.

Plaintiff shall be reimbursed $121.13 for supplies and copying costs as well as $130.00

for the deposition of Patti Barney and $150.00 fee for filing the Complaint or a total of ***$401.13***.

## D.     *Form of Plaintiff's Proposed Order*

Defendant argues the form of the proposed order is inappropriate.  Defendant should not

be ordered to pay any amounts.  "To order payment would interfere with Defendant's right to

seek relief in this Court and if necessary the appellate courts, by requiring payout of monies that

may not ultimately be due or later retrievable, and otherwise can be stayed by a bond, which in

the case of an agency like the Commission is not believed to even be required."  Def.'s Opp'n, at

21 (citation omitted).  Plaintiff is perplexed by Defendant raising this issue.  "Normally, the trial

court orders a defendant to pay a certain amount and defendant then moves for a stay of the order

pending appeal and may be ordered to post a bond.  Where the defendant is the government, a

---

[10] Defendant mistakenly states that this receipt is attached to Mr. Kestell's Affidavit.  *See* Def.'s Opp'n, at 20.

stay on monetary amounts is usually automatic and no bond is required."  Pl.'s Reply, at 21.

Although this Court has not resolved all motions before it, the parties nonetheless have already filed Notices of Appeal.  *See* Document No. 90 (Notice of Appeal by Defendant); Document No. 93 (Notice of Cross Appeal by Plaintiff); Document No. 94 (Order of the United States Court of Appeals for the Fourth Circuit consolidating appeals).

Federal Rule of Appellate Procedure 8(a)(1) states:

> A party must ordinarily move first in the district court for the following relief:
> (A) a stay of the judgment or order of a district court pending appeal;
> (B) approval of a supersedeas bond; or
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

Per Local Rule 110.1.b., the requirement that a party seeking to stay the execution of a money judgment pending appeal must post a supersedeas or appeal bond is waived for the State of Maryland, any of its political subdivisions and any agents thereof.  Since the Court is fully aware that cross appeals are pending, the Court will *sua sponte* defer enforcement of any and all money judgments pending resolution of the appeals.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Amend the Judgment to Include Equitable Relief and for Attorney's Fees will be granted in part and denied in part.  Defendant's Motion for Relief from Judgment will be granted.  A separate Order will follow.

_____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE

March 9, 2007